James R. ROWLAND, James F. Rowland, David A. Rowland and Helen J. Martin, Appellants (Defendants Below),

v.

AMOCO OIL COMPANY, Appellee (Plaintiff Below).

No. 3–981A218.

Court of Appeals of Indiana, Third District.

March 15, 1982.

Rehearing Denied April 21, 1982.

Gerald K. Hrebec, Fred M. Cuppy, George W. Carberry, Thomas, Burke, Dyerly & Cuppy, Merrillville, for appellants.

Richard A. Browne, Gordon A. Etzler, Hoeppner, Wagner & Evans, Valparaiso, for appellee.

HOFFMAN, Presiding Judge.

The plaintiff, Amoco Oil Company (Amoco), leased a tract of land in Valparaiso on which it operated a service station. Amoco brought suit against the heirs of its original lessor seeking specific performance of an allegedly exercised real estate purchase option for the leased property. After Amoco filed a motion for summary judgment, the defendants, James R. Rowland, James F.

Rowland, David A. Rowland, and Helen J. Martin (the Rowland Heirs), entered a cross-motion for summary judgment. The trial judge subsequently granted the Amoco motion, and the Rowland Heirs now bring this appeal.

The sole issue to be adjudicated is whether Amoco did in fact exercise its option properly, thereby creating a binding executory contract and obligating the Rowland Heirs to convey the real estate in dispute at the option price. The controversy arose when Amoco included an incorrect purchase price in a letter which purported to exercise the option.

The undisputed facts of the case reveal that in 1957 an ancestor of the Rowland Heirs executed a ten-year lease with Amoco's predecessor in interest, Standard Oil of Indiana. The lease terms included an option to purchase the property for $60,000. Exercising this option required notice to the lessor by registered mail at least thirty days prior to the expiration of the lease.

A lease rider was executed in 1964 wherein the expiration date of the lease was extended to September 30, 1979. This rider also increased the purchase price to $66,000. A subsequent lease rider changed the method of notice to certified mail.

After the death of the Rowland Heirs' ancestor in 1976, the executor of the estate sent the following inquiry to Amoco by regular mail:

"In the lease terms, it should be noted that your company has an option to purchase said real estate. Would you please advise my office by return mail, if possible, if your company is interested in exercising said option to purchase said real estate. It is important that I understand the intentions of your company before going further in these estate proceedings."

Amoco replied by regular mail on January 19, 1977, as follows:

"Please be advised that Amoco Oil Company would be agreeable to purchasing the above-referenced station at the expiration of our leasehold term, which is September 30, 1979, at the option price.

"If you have any further questions regarding this matter, please contact me."

Upon receiving this reply, the executor sent a letter to each of the Rowland Heirs, stating in part:

"Standard Oil has advised me by letter that they would like to exercise their right to purchase the filling station. By the terms of the contract, they have the unilateral right to exercise said option. I will advise you further on this filling station by separate letter."

The executor then directed Amoco to forward all lease payments to a trust established at the First National Bank of Valparaiso on behalf of the Rowland Heirs. No address was specified, however, to which notice of exercising the purchase option was to be sent. Accordingly, Amoco sent the following letter by certified mail to the trustee on July 13, 1979:

"Dear Mr. Brown:

Re:   S[ervice] S[tation] # 20201
U.S. 30 and S.R. # 49
Valparaiso, Indiana

Please refer to that certain lease between Jana W. Rowland, lessor, and Standard Oil Company, whose interest has been assigned to Amoco Oil Company, a Maryland Corporation, dated March 15, 1957. Pursuant to Paragraph 9 thereof, Amoco hereby elects to exercise its option to purchase said premises, buildings, fixtures, equipment, machinery, and appliances included in said lease, for the sum of $60,000.

I will contact you shortly so that a proper closing can be arranged."

Pursuant to an agreement with the Rowland Heirs, the trustee then forwarded the above letter to appellant James R. Rowland together with the following note on July 18, 1979:

"I have enclosed a copy of the letter received today from Amoco Oil Company. They are exercising their option to purchase the station at Highways 49 and 30.

"I have written and requested a copy of the closing statement prior to the actual

closing date. When it is received I will forward to you for your consideration."

The Rowland Heirs ultimately refused to close the sale, claiming that the lease had expired without Amoco having sent proper notice that it was exercising its option. Appellants' adopted this position despite Amoco's assurance that the $60,000 purchase price stated in its letter of July 13, 1979 was a typographical error, and that the company fully realized that the option price was $66,000. As a showing of good faith, Amoco deposited the correct amount in the First National Bank of LaPorte pending disposition of the dispute.

After review, the trial judge properly concluded that no issue of material fact was before the court. Accordingly, he granted summary judgment to Amoco after noting that the law set forth in *Theobald v. Chumley* (1980), Ind.App., 408 N.E.2d 603, was dispositive of the issue presented.

On appeal from the grant of summary judgment based solely upon a question of law, this Court stands in the shoes of the trial court. *Commission on Gen. Ed. v. Union Tp. Sch.* (1981), Ind.App., 419 N.E.2d 181. It must therefore be determined whether the trial court correctly applied the law. *State ex rel. Van Buskirk v. Wayne Tp., etc.* (1981), Ind.App., 418 N.E.2d 234. We think that it did.

In *Butsch v. Swallow* (1922), 78 Ind.App. 101, at 106, 134 N.E. 877, at 878, this Court stated:

> "It has been many times held that an option to purchase gives no right of property in and to the thing which is the subject of the option. It is not a sale. It is not even an agreement for a sale. At most, it is but a right of election in the party receiving the same to exercise a privilege, and only when that privilege has been exercised by an acceptance does it become a contract to sell."

Thus, an option is merely a continuing offer which can be accepted at any time during the life of the option in accordance with the terms therein. *Theobald v. Chumley, supra.* It was noted in *Uniroyal, Inc. v. Chambers Gasket & Mfg. Co.* (1978), Ind.App., 380 N.E.2d 571, at 575, that:

> "At common-law, 'for an offer and an acceptance to constitute a contract, the acceptance must meet and correspond with the offer in every respect, neither failing within nor going beyond the terms proposed, but exactly meeting [those terms] at all points and closing with them just as they stand.' *Gates v. Petri* (1957) 127 Ind.App. 670, 143 N.E.2d 293, 297. An acceptance which varies the terms of the offer is considered a rejection and operates as a counter-offer, which may be accepted by the original offeror by performing without objection under the terms contained in the counter-offer."

It is therefore generally agreed that the exercise of an option is effective only if it strictly adheres to the terms stipulated in the agreement. *Bandy v. Myers et al.* (1967), 141 Ind.App. 220, 227 N.E.2d 183; *Coons v. Baird* (1970), 148 Ind.App. 250, 265 N.E.2d 727. However, several jurisdictions have recognized that absolute compliance with this "mirror image" rule can sometimes result in harsh or unfair decisions.

Thus, the most equitable result is obtained by applying the standard set forth in *Cattle Feeder's, Inc. v. Jordan* (1977) Tex. Civ.App., 549 S.W.2d 29, at 32–33, in which the court stated:

> "As a general rule, in absence of equities, an optionee is held to strict compliance with the terms of an option agreement. (Citation omitted) ... An optionee will be excused from strict compliance where his conduct in failing to comply was not due to willful or gross negligence on the part of the optionee but was rather the result of an honest and justifiable mistake."

The record in this cause is devoid of facts from which it might be inferred that Amoco was attempting to defraud the Rowland Heirs. On the contrary, all of the parties acknowledge that the inclusion of the wrong dollar amount in the July 1979 letter was only an error of omission, and not of design. Equity should therefore provide relief.

A consistent result was achieved in *Theobald v. Chumley, supra,* in which an inaccurate survey resulted in the optionee attempting to purchase more land than the option agreement actually covered. Despite the inclusion of the erroneous term, this Court held that when the optionee "communicated his intent to exercise the option, the contract was consummated and binding upon both parties, and that the additional acreage included in the warranty deed prepared by Theobald amounted to only an offer that could be either accepted or rejected by the optionors." 408 N.E.2d at 606. Though *Theobald* differs from the instant case in that the optionors were seeking enforcement of agreement, mutuality of obligation demands the same result here. Once Amoco notified the Rowland Heirs by certified mail that it was exercising the option, the terms therein became binding and enforceable by both parties. Had Amoco tendered only $60,000, the Rowland Heirs could have refused to execute the deed and sought compensation for their loss of bargain through suit for damages.

The exercise of the option by Amoco was made clearly and unequivocally. Recitation of the exact terms of the agreement was not necessary. The Rowland Heirs cannot avoid their obligation under the contract.

The holding of the trial court is therefore affirmed.

Affirmed.

GARRARD and CONOVER, participating by designation, JJ., concur.