Charles E. SCALF, Jr., Appellant
(Plaintiff Below),

v.

BERKEL, INCORPORATED, Appellee
(Defendant Below).

No. 2–282–A–45.

Court of Appeals of Indiana,
Second District.

May 17, 1983.
Rehearing Denied July 19, 1983.

Vernon J. Petri, Thomas C. Doehrman, Petri, Fuhs & Doehrman, Indianapolis, for appellant.

Evan E. Steger, Ice, Miller, Donadio & Ryan, Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Plaintiff-appellant Charles E. Scalf, Jr. (Scalf) appeals from a summary judgment barring his product liability action against defendant-appellee Berkel, Incorporated, (Berkel), asserting federal due process and equal protection attacks on the constitutionality of the ten-year limitation on filing actions under the Indiana Product Liability Statute of Limitation (hereinafter cited as Statute).

We affirm.

## FACTS

The undisputed facts are that Scalf was employed by a meat market in Noblesville, Indiana. A meat grinding machine used at the market had been manufactured by a subsidiary of a predecessor in interest to Berkel. While using the machine, on June 21, 1978, Scalf suffered injuries which resulted in the amputation of his right arm below the elbow.

On March 2, 1981, Scalf instituted suit against Berkel for damages arising from his injury. Berkel responded to the complaint and simultaneously filed a motion for summary judgment, alleging that Scalf's cause was barred by the ten-year provision of the Statute.

After a hearing, in which Scalf challenged the Statute on constitutional grounds, the trial court found that the meat grinder was delivered by the manufacturer on October 29, 1957 (more than ten years before the date of Scalf's injury), that Scalf's cause of action was subject to the Statute, and that summary judgment should be granted in favor of Berkel. *Record* at 103–105. In so ruling, the trial court implicitly rejected Scalf's argument that the Statute violated the due process and equal protection provisions of the Fourteenth Amendment to the United States Constitution (hereinafter cited as Fourteenth Amendment).

Scalf appeals.

## ISSUES

Two issues are presented for review:

1. Does the Statute violate the due process clause of the Fourteenth Amendment?

2. Does the Statute violate the equal protection clause of the Fourteenth Amendment?

## DECISION

ISSUE ONE—Does the Statute violate the due process clause of the Fourteenth Amendment?

PARTIES' CONTENTIONS—Scalf emphasizes differing language between the Indiana Constitution and the federal constitution which he says results in "due process" protection. He seeks to avoid the effect of *Dague v. Piper Aircraft Corp.*, (1981) Ind., 418 N.E.2d 207 (holding the Statute compatible with the "due course of law" clause of the Indiana Constitution) by asserting there is a violation of federal due process because the ten-year claim provision of the Statute constitutes an infringement of his fundamental right to bring suit, and he relies on *Lankford v. Sullivan, Long & Hagerty*, (1982) Ala., 416 S.2d 996,[1] as a model of reasoning. Scalf further asserts that the Statute creates an irrebuttable presumption affecting persons in his circumstances.

Berkel responds that we should adhere to the decision in *Dague*, reject any claim of a fundamental right on Scalf's part, and find that the Statute operates in a manner rationally related to its purpose.

CONCLUSION—The Statute complies with the dictates of Fourteenth Amendment due process.

Scalf and Berkel agree that the meat grinder was delivered to the initial user or consumer more than ten years prior to the occasion of Scalf's injury and do not dispute that the Statute is applicable. The Statute,

1. Scalf presents *Lankford v. Sullivan, Long & Hagerty*, (1982) Ala., 416 So.2d 996, as additional authority pursuant to Ind.Rules of Procedure, Appellate Rule 8.4(B).

which is sometimes referred to as a statute of repose, does set a time limit on the filing of a product liability action:

"This section applies to all persons regardless of minority or legal disability. Notwithstanding IC 34–1–2–5, *any product liability action must be commenced within two (2) years after the cause of action accrues or within ten (10) years after the delivery of the product to the initial user or consumer;* except that, if the cause of action accrues more than eight (8) years but not more than ten (10) years after that initial delivery, the action may be commenced at any time within two (2) years after the cause of action accrues." [2]

As no factual controversy exists, our task is to determine if the trial court's application of the Statute was appropriate in light of the constitutional challenge raised by Scalf. *Rowland v. Amoco Oil Co.,* (1982) Ind.App., 432 N.E.2d 414, *trans. denied.*

■ In confronting the constitutional challenge to the Statute, we do not question the wisdom or desirability of the actions taken by the legislature. *See Short v. Texaco, Inc.,* (1980) Ind., 406 N.E.2d 625, aff'd 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738. "Otherwise, under the guise of limiting the Legislature to its constitutional bounds, we are likely to exceed our own." *Sidle v. Majors,* (1976) 264 Ind. 206, 208, 341 N.E.2d 763, 766. Therefore, we accord a strong presumption of constitutionality to all duly enacted statutes. Any reasonable doubts which occur are resolved in favor of the constitutionality of the legislation at issue, so it is manifest that the challenger bears a heavy burden. *Dague, supra; Johnson v. St. Vincent Hospital, Inc.,* (1980) Ind., 404 N.E.2d 585; *Sidle, supra.*

Though confronted with an issue of first impression in Indiana—a Fourteenth

Amendment challenge to the Statute—we are not without authority to guide us in our resolution of the issue. The Statute has been found in compliance with the Indiana "due course of law" requirement, a constitutional provision analogous to the due process clause of the Fourteenth Amendment. *Dague, supra.* Furthermore, our courts have previously confronted Fourteenth Amendment due process claims, establishing in the process both the scope and course of the applicable analysis. So, we turn to Scalf's due process challenge.

■ Proper inquiry into Scalf's due process challenge requires us to determine whether the Statute "is a rational means to achieve the goal which the legislature through its enactment sought to reach." *Johnson, supra* at 598 (citations omitted).[3] We reject Scalf's assertion that he possesses a fundamental right to bring suit which would entitle his cause to a more demanding standard of review. It is well settled in Indiana that the ability to bring a cause of action does not rise to the level of a fundamental right for constitutional purposes.

" 'Both this Court and the United States Supreme Court have upheld the right of states to abolish or modify the common law.' [O]ne of the acknowledged functions of legislation is to change the common law to reflect change of time and circumstances. Moreover, there is no vested or property right in any rule of the common law, and the right to bring a common law action is not a fundamental right."

*Dague, supra* at 213 (quoting *Sidle, supra* ). Moreover, Scalf lost no vested right. His circumstance is like that of the unsuccessful plaintiff in *Dague* (a state "due course of law" challenge rejected) in which plaintiff filed suit in 1978 for a death resulting from

---

2. Ind.Code 33–1–1.5–5 (emphasis supplied).

3. In *Johnson,* our supreme court applied the same legal analysis to the due course of law provision of the Indiana Constitution and the federal due process provision. This negates Scalf's contention that the Indiana "due course of law" provision is not "precisely coextensive" with that of the "due process" clause of the

Fourteenth Amendment. *See Johnson, supra. Dague, supra,* holds that the Statute does not contravene the due course of law provision of the Indiana Constitution. Impliedly, our supreme court has held that the Statute meets the requirements of Fourteenth Amendment due process.

an allegedly defective aircraft manufactured in 1965. In both instances, no cause of action had accrued at the time the no cause provision of the Statute became effective, so that at the time of loss there was no cause of action existing.

■ Our inquiry is also directed towards discovering the goal of the Indiana Legislature in enacting the Statute.

"The general purpose of a statute of limitation is to encourage prompt presentation of claims. *United States v. Kubrick*, (1979) 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259. When any alleged tortfeasor is required to defend a claim long after the alleged wrong has occurred, the ability to successfully do so is diminished by reason of dimmed memories, the death of witnesses, and lost documents. As the years between injury and suit increase, so does the probability that the search for truth at trial will be impeded and contorted to the benefit of the plaintiff."

*Johnson, supra* at 604. The general goal of the legislature is to limit the period of time within which to bring a product liability action. *Dague, supra* at 210. The General Assembly was confronted by evidence of skyrocketing product liability insurance costs fueled by huge increases in the number of product liability claims, large increases in the amounts of settlements and awards, and indications that the victim of an allegedly defective product was favored over the maker of that product in the tort process. *J. Vargo, Survey of Recent Developments—Products Liability,* 15 *Ind.Law. Rev.* 289 (1982).[4] (hereinafter cited as *Survey*) The Statute reflects a legislative appraisal that a causal relationship existed between the time period for prosecuting a product liability action and the ever-accelerating insurance costs for product liability protection.

4. Although this "products liability crisis" is attacked as manufactured, this information was presented to the legislature as indicative of a need for action. *Survey, supra.* We will not engage in the luxury of second guessing the wisdom of the legislature's actions.

5. Moreover, Scalf does not argue or show that the period allowed by the Statute for initiating

Our legislature responded in a similar manner to evidence of a medical malpractice insurance crisis in enacting the Indiana Medical Malpractice Act. The legislature enacted limitations on the time to file and the amount of recovery in an effort to reduce the difficulties in obtaining medical malpractice insurance. Our supreme court, in *Johnson,* found that a rational relationship existed between the enactment of the Medical Malpractice Act and the limitations imposed in both time and amount. A similar relationship exists in the enactment of the Statute.[5]

Thus the law has rejected Scalf's assertion that the Statute creates a constitutionally impermissible presumption that persons injured using machines or products of ten years of age or more are undeserving of compensation for their injuries. A similar argument was presented in *Johnson,* wherein some appellants argued that the Medical Malpractice Statute created an irrebuttable presumption that an injured patient's loss could never exceed the limitations set forth in the statute and that those persons were precluded from proving otherwise. It is true that, "[a] statute cannot survive a due process challenge if it denies rights and benefits on the basis of facts presumed to exist and to be true, without affording the individual an opportunity to defend those facts." *Johnson, supra* at 599–600 (citations omitted). But that argument was rejected in *Johnson,* the court observing that the Medical Malpractice Act did not create the evidentiary presumption which the challengers claimed; rather, it reflected a policy of the law which denied those individuals recovery. The Statute does not presume, as Scalf would have us believe, that persons injured by machines of ten years of age or more are undeserving of compensation and

an action is in any manner so insufficient as to constitute a denial of justice, thus voiding the statute for denial of due process. Our determination, after review of the Statute, is that such a showing could not be made. *See Nahmias v. Trustee of Indiana University,* (1983) Ind.App., 444 N.E.2d 1204, 1210 *trans. denied.*

denied an opportunity to prove otherwise. The Statute simply reflects a policy of the law, as declared by the legislature, that after a given length of time a manufacturer should be sheltered from liability.

We decline to adopt the reasoning of the Alabama Supreme Court in *Lankford, supra.* *Lankford* addressed the constitutionality, under a state due process provision, of a portion of the Alabama product liability statute of limitation quite similar to the Indiana ten year provision.[6] Unlike Alabama, Indiana does not consider a common law cause of action to be a fundamental right. *Dague, supra* at 213. The Alabama court requires the State to provide a quid pro quo to the individual who is deprived of such a remedy. Our supreme court has expressly rejected the quid pro quo approach utilized by the Alabama court. *Id.* Moreover, we reject *Lankford* because of a fundamental divergence of viewpoint regarding the deference accorded a statute by the courts of Alabama and Indiana. In determining the state constitutionality of its statute, the Alabama court reviewed the information available to the enacting legislative body and concluded from that information that the effect of the statute was arbitrary in nature. This approach has been rejected as inappropriate for an appellate court in Indiana. *Bunker v. National Gypsum Co.,* (1982) Ind., 441 N.E.2d 8. As Judge Neal recently observed, "[i]n our decision we must be ever mindful that we are not engaged in the fabrication or selection of the wisest, or most desirable [,] of a number of possible courses in the common law." *Beecher v. White* (1983) Ind.App., 447 N.E.2d 622. Any other course would sound the death knell for the time honored principle that this court will not engage in judicial legislation.

ISSUE TWO—Does the Statute violate the equal protection clause of the Fourteenth Amendment?

PARTIES' CONTENTIONS—Scalf focuses on the distinction between products that are used within ten years and those which are longer lived than ten years, asserting that this difference creates a violation of equal protection by treating similarly situated individuals in an impermissibly different manner.

Berkel attacks Scalf's standing to bring the equal protection argument and asserts that, in any event, the classification created by the Statute is rationally related to a legitimate state purpose.

CONCLUSION—The Statute complies with the mandate of Fourteenth Amendment equal protection.[7]

Indiana courts have not dealt with a Fourteenth Amendment equal protection challenge to the Statute; however, we are not cast adrift in uncharted waters. The courts of this State have often addressed federal equal protection questions and one federal court has addressed a Fourteenth Amendment equal protection challenge to the validity of the Statute. In turning to Scalf's challenge of the Statute's validity, it is appropriate to recall once more that the Statute is clothed with a strong presumption of constitutionality, that all reasonable doubts will be resolved in favor of the Statute's constitutionality, and that this court will not substitute its judgment for that of the Legislature. *See Short, supra; Sidle, supra.*

The analysis which must be applied is well established:

"Where neither a fundamental right nor a suspect classification is involved, the standard of review is that the classification not be arbitrary or unreasonable and that a 'fair and substantial' relationship exist between the classification and the purpose of the legislation creating it. *Sidle v. Majors, supra.*"

*Johnson, supra* at 600. No fundamental right or suspect class is at issue. With this

---

6. The Alabama statute stated in part, "[A] product liability action against an original seller must be brought within 10 years after the manufactured product is first put to use by any person or business entity . . . ." *Lankford, supra* at 999.

7. As a member of the class of plaintiffs whose actions are barred by the ten-year provision of the Statute, Scalf has standing to assert his equal protection challenge.

statement, the parties are in agreement.[8] We have held that a rational relationship exists between the Statute (specifically, its ten year limitation) and the purpose of the Statute (to eliminate problems associated with obtaining product liability protection). This analysis serves also to establish that a fair and substantial relationship exists between the purpose of the Statute and its operation. The Federal District Court for the Northern District of Indiana has addressed an equal protection challenge to the Statute. Although the decision of the Federal District Court is not binding on our determination, we find its reasoning persuasive:

> "[T]o the extent that manufacturers are singled out for protection or consumers of older products are unprotected, such classifications are reasonable and rational. The Indiana Legislature was particularly concerned about the ever increasing number of products liability claims. The Legislature's rational response was to limit products liability claims by saying, in effect, that after ten years, one cannot blame a product for any injury occurring after that period. Such action should be seen as a reasonable legislative response to what the Legislature perceived to be a pressing problem. The Supreme Court of Indiana in *Sidle, supra*, 341 N.E.2d at 772, has already clearly recognized that the protection of liability insurance companies is a legitimate legislative concern. Additionally, making such insurance available also serves a broad public purpose by providing a source of funds for recovery which might not otherwise be available."

*Dague v. Piper Aircraft Corp.* (N.D.Ind. 1980) 513 F.Supp. 19, 25. We hold, as did the Federal District Court, that the Statute does not violate the equal protection clause of the Fourteenth Amendment.

The action of the trial court in granting summary judgment for Berkel, implicitly overruling Scalf's constitutional challenge to the Statute, must be affirmed. The trial court properly applied the Statute to the facts of Scalf's case, and in doing so, followed the majority of jurisdictions considering the issue.[9]

Judgment affirmed.

SULLIVAN and SHIELDS, JJ., concur.

---

8. We observe that the equal protection provisions of the constitutions of Indiana and the United States *protect identical rights. Sidle, supra; Cunningham v. Aluminum Company of America, Inc.,* (1981) Ind.App., 417 N.E.2d 1186. In determining that the "fair and substantial relationship" test would be applied in *Johnson,* our supreme court stated, "that the same test is applicable here [in *Johnson*], and that it is likewise applicable to testing the [Medical Malpractice] Act on the state constitutional grounds used." *Johnson, supra* at 600. The analysis utilized in Indiana case law is applicable to federal equal protection questions, contrary to Scalf's assertion otherwise.

9. *See F. McGovern, Symposium: Products Liability—The Variety, Policy and Constitutionality of Product Liability Statutes of Repose,* 30 *Am.U.L.Rev.* 579 581 (1981).