JEAN LEE TETTERTON, ADMINISTRATRIX OF THE ESTATE OF ORLANDER B. TETTERTON, DECEASED v. LONG MANUFACTURING COMPANY, INC., AND REVELS TRACTOR COMPANY, INC.

No. 260PA84

(Filed 3 July 1985)

1. **Appeal and Error § 3— constitutionality of G.S. 1-50(6) properly raised at trial**

In a products liability action arising from the death of plaintiff's intestate while operating a tobacco harvester, the issue of whether G.S. 1-50(6) is constitutional was properly presented to the trial court and was properly before the Supreme Court where the petition for rehearing in the Court of Appeals included an affidavit signed by the presiding judge stating that the issue had been raised, presented, and argued at a hearing on a motion for summary judgment.

Tetterton v. Long Manufacturing Co.

**2. Constitutional Law § 20.1— statute of repose for products liability actions—no violation of equal protection**

G.S. 1-50(6) does not violate the equal protection clauses of the state or federal constitutions because the act was intended to apply to manufacturers and retail sellers alike and does not discriminate between manufacturers and retail sellers of products. The statute also includes individuals engaged in the business of selling a product and bars all actions brought after six years whether those actions are characterized as first party actions, cross-claims, or counterclaims. G.S. 99B-1(3), G.S. 99B-2, G.S. 99B-4, G.S. 99B-1(4).

**3. Constitutional Law § 19— statute of repose for products liability actions—not a special emolument**

G.S. 1-50(6) does not grant an exclusive or separate emolument or privilege because the statute on its face does not create a special emolument or privilege. G.S. 1-50(5), Art. I, § 32 of the North Carolina Constitution.

**4. Courts § 1— statute of repose for products liability action—no violation of open courts clause**

G.S. 1-50(6) does not violate the open courts clause of the North Carolina Constitution by barring a claim before the death giving rise to the claim occurs because the time period is not so short that it would effectively abolish all claims. Art. I, § 18 of the North Carolina Constitution.

**5. Statute of Limitations § 4.2— statute of repose for products liability actions—not unconstitutionally vague**

G.S. 1-50(6) is not unconstitutionally vague in its use of "initial purchase for use or consumption" where the tobacco harvester in question was sold by defendant manufacturer to a dealer in 1974, the dealer sold it to a farmer in 1975, that farmer sold it to Revels Tractor Company, Inc. in 1981, and Revels sold it to plaintiff's intestate in 1981. The obvious intent of the Legislature was to limit the manufacturer's liability after a certain period of years had elapsed from the date of initial purchase for use or consumption; if every consumer's subsequent purchase was characterized as an initial purchase, the manufacturer's liability would extend indefinitely and the intent of the Legislature would be defeated.

Justice VAUGHN did not participate in the consideration or decision of this case.

ON discretionary review of the decision of the Court of Appeals, 67 N.C. App. 628, 313 S.E. 2d 250 (1984), affirming summary judgment entered in favor of defendant Long Manufacturing Company, Inc., during the 18 February 1983 civil non-jury session of PITT County Superior Court.

*Gaylord, Singleton, McNally, Strickland & Snyder, by L. W. Gaylord, Jr., and Vernon G. Snyder, III, for plaintiff-appellant.*

*Young, Moore, Henderson & Alvis, by John E. Aldridge, Jr., and Robert C. Paschal, for defendant-appellant Revels Tractor Company, Inc.*

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Ronald C. Dilthey and Patricia L. Holland, for defendant-appellee Long Manufacturing Company, Inc.*

FRYE, Justice.

## FACTS

Factually, this matter is not complicated. Defendant-appellee Long Manufacturing Company, Inc. (hereinafter Long) manufactured a tobacco harvester on 10 April 1974. Thereafter, on 1 July 1974, Long sold the harvester to a dealer and distributor, who subsequently sold the tobacco harvester to a farmer on 7 March 1975. The farmer used the equipment on his farm until he sold it to defendant-appellant Revels Tractor Company, Inc. (hereinafter Revels) on 3 February 1981. On 7 July 1981, Revels sold the tobacco harvester to plaintiff-appellant's husband.

Plaintiff's husband was killed on 8 July 1981 while operating the tobacco harvester on his farm. Plaintiff alleged in her complaint "[t]hat the direct and proximate cause of the . . . death of plaintiff's intestate was the negligent design, manufacture and sale of said tobacco bulk harvester by defendant Long Manufacturing Company, Inc., in that the directions for the operation of the aforesaid 'lift control lever,' which operated the cable and forklift system supporting the trailer which collapsed, were inaccurately, misleadingly and defectively labeled." Plaintiff was appointed administratrix of the estate of her deceased husband, and she commenced an action against Long, the manufacturer, and Revels, the retailer, on 6 October 1981.

In its answer, Long pled as an affirmative defense the provisions of G.S. 1-50(6), the six-year statute of repose for product liability actions. Revels filed an answer denying liability and also cross-claiming against Long for indemnity and contribution. After the filing of the initial pleadings and the initiation of discovery, Long moved for summary judgment, relying upon G.S. 1-50(6) and alleging that the statute operated to bar any actions filed against it. On 18 February 1983, the trial court granted Long's motion for summary judgment, and the claims of plaintiff and Revels were dismissed. From this order, plaintiff and Revels appealed to the

Court of Appeals. That court affirmed the judgment of the trial court. Plaintiff and Revels thereafter petitioned for discretionary review to this Court, which was allowed.

I.

[1]   The dispositive issue on this appeal is whether G.S. 1-50(6) is constitutional. We conclude that the statute is constitutional. The Court of Appeals declined to reach this precise issue because the record that was before that court did "not affirmatively disclose that the constitutionality of N.C. Gen. Stat. § 1-50(6) was raised, discussed, considered, or passed upon in the trial court." *Tetterton v. Long Manufacturing Company, Inc.*, 67 N.C. App. 628, 630, 313 S.E. 2d 250, 251 (1984). The Court of Appeals cited and relied upon *Midrex Corp. v. Lynch*, 50 N.C. App. 611, 274 S.E. 2d 853, *disc. rev. denied and appeal dismissed*, 303 N.C. 181, 280 S.E. 2d 453 (1981) to support its conclusion. In that case the court stated:

> The record does not contain anything in the pleadings, evidence, judgment or *otherwise*, to indicate that any constitutional argument was presented to the trial court. The appellate court will not decide a constitutional question which was not raised or considered in the trial court . . . . The record must affirmatively show that the question was raised and passed upon in the trial court.

*Id.* at 618, 274 S.E. 2d at 857-58. (Emphasis added.)

It is true that neither Long's motion for summary judgment nor the judgment itself, both of which are in the record on appeal, makes reference to the constitutionality of the statute relied upon by Long. This is entirely proper, since it is not a part of the function of the court on a motion for summary judgment to make findings of fact and conclusions of law. *Mosley v. National Finance Co. Inc.*, 36 N.C. App. 109, 243 S.E. 2d 145, *cert. denied*, 295 N.C. 467, 246 S.E. 2d 9 (1978). We find, however, that the record does "otherwise" contain indications that the constitutional issue was before the trial court. Both plaintiff and Revels assigned as error the fact that the trial judge improperly granted Long's summary judgment motion because the statute relied upon was unconstitutional. Although not before the Court of Appeals when the case was initially heard and decided by that court, plaintiff and Revels

included in their petition for rehearing to that court an affidavit signed by Judge Reid, who presided at the hearing on the summary judgment motion. That affidavit stated:

> 3. That at the aforesaid hearing upon Motion for Summary Judgment, the issue of the constitutionality of G.S. 1-50(6) was timely raised, presented, and argued to the Court following submission to the Court by the parties of trial briefs specifically directed to their respective positions concerning the constitutionality or unconstitutionality of the said G.S. 1-50(6).

Thus, we conclude that the record indicates that the constitutional question was properly presented to and considered by the trial court and the Court of Appeals below and is properly before this Court on appeal.

## II.

Plaintiff contends that G.S. 1-50(6) is unconstitutional because it violates (1) the equal protection clause of the Fourteenth Amendment to the United States Constitution and Article I, § 19, of the North Carolina Constitution; (2) the prohibition against "exclusive or separate emoluments or privileges" in Article I, § 32, of the North Carolina Constitution; and (3) the "open courts" provision of Article I, § 18, of the North Carolina Constitution. Plaintiff also contends that G.S. 1-50(6) is unconstitutionally vague. Defendant, Revels Tractor Company, Inc., joins in plaintiff's equal protection argument. We will address each of these arguments separately.

In the case *sub judice*, all of the parties stipulated and agreed to the following:

> (4) For the sole purpose of this appeal, summary judgment on behalf of Long Manufacturing Company, Inc., would only be appropriate if plaintiff's action is barred by the applicable North Carolina statute of limitations;

This stipulation further refines the scope of inquiry on this appeal to a determination of whether plaintiff's action is barred by G.S. 1-50(6).

A.

G.S. 1-50(6), the statute in controversy, provides:

No action for the recovery of damages for personal injury, death or damage to property based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than six years after the date of initial purchase for use or consumption.

As applied to the instant facts and to plaintiff's action against Long, farmer Jimmy Ray Casey initially purchased the tobacco harvester to be used on his farm on 7 March 1975. On 6 October 1981, more than six years after this initial purchase by farmer Casey, plaintiff commenced her action to recover for the death of her husband, who had subsequently purchased the equipment from defendant Revels on 7 July 1981. Long raised as an affirmative defense in its answer G.S. 1-50(6), a statute of repose which bars a products liability action if commenced more than six years after the date of initial purchase for use or consumption. Ultimately, plaintiff's action and defendant's cross-action were dismissed against Long based upon this statute.

In addressing the constitutional challenges to the statute, certain rules of statutory construction must be adhered to. In construing a statute to determine whether it is constitutional, our courts have consistently recognized that there is a strong presumption that an enactment of the legislature is constitutional. *Lamb v. Wedgewood South Corp.*, 308 N.C. 419, 302 S.E. 2d 868 (1983). Furthermore, reasonable doubts must be resolved in favor of sustaining the act. *Id.* Our Court has stated, "In considering the constitutionality of a statute, it is well established that the courts will indulge every presumption in favor of its constitutionality." *Painter v. Wake County Board of Education*, 288 N.C. 165, 177, 217 S.E. 2d 650, 658 (1975). A statute will not be declared unconstitutional unless it is clearly so, and all reasonable doubt will be resolved in favor of its validity. *Glenn v. Board of Education of Mitchell County*, 210 N.C. 525, 187 S.E. 781 (1936).

[2] Plaintiff contends "that G.S. 1-50(6) violates the equal protection clauses of both our State and Federal Constitutions on the basis that it impermissibly distinguishes between manufacturers and suppliers as sellers of products who are protected from liabili-

Tetterton v. Long Manufacturing Co.

ty beyond the specified six-year period and retail businesses and private individuals as sellers of the identical products who are not granted the same protections." Revels also joins plaintiff in this argument. G.S. 1-50(6) was enacted in 1979 and incorporated into the products liability statute, Chapter 99B. This chapter describes the actions to which the statute applies. In pertinent part, G.S. 99B-1(3) provides:

> (3) "Product liability action" includes any action brought for or on account of personal injury, death or property damage caused by or resulting from the *manufacture*, construction, design, formulation, development of standards, preparation, processing, assembly, testing, listing, certifying, warning, instructing, marketing, *selling*, advertising, packaging or labeling of any product. (Emphasis added.)

On the face of the statute, a product liability action includes one involving the manufacture and sale of a product. Within the act are definitions of a manufacturer[1] and a seller.[2] Furthermore, Sections 99B-2 and B-4 refer to the liability of a seller *and* manufacturer. On the face of this statute, it seems evident that this act, along with the applicable statute of repose contained within G.S. 1-50(6), was meant and intended to apply to manufacturers and retail sellers alike.

Even before Chapter 99B was enacted, product liability actions were brought against both manufacturers and sellers under a negligence theory. *See Prosser and Keeton on Torts* § 100 (5th ed. 1984). However, when the theory of recovery was breach of warranty, a plaintiff was prevented from bringing a claim against a manufacturer or seller if there was no contractual privity between the manufacturer or seller and plaintiff. *Davis v. Siloo,*

---

1. (2) "Manufacturer" means a person or entity who designs, assembles, fabricates, produces, constructs or otherwise prepares a product or component part of a product prior to its sale to a user or consumer, including a seller owned in whole or significant part by the manufacturer or a seller owning the manufacturer in whole or significant part.

2. (4) "Seller" includes a *retailer*, wholesaler, or distributor, and means any individual or entity engaged in the business of selling a product, whether such is for resale or for use or consumption. "Seller" also includes a lessor or bailor engaged in the business of leasing or bailment of a product. (Emphasis added.)

*Inc.*, 47 N.C. App. 237, 267 S.E. 2d 354 (1980), *disc. rev. denied*, 301 N.C. 234, 283 S.E. 2d 131 (1980). In that situation, the plaintiff had to commence an action against the party with whom he was in privity, usually the retailer. *See Tedder v. Pepsi-Cola Bottling Co., Inc.*, 270 N.C. 301, 154 S.E. 2d 337 (1967); 63 Am. Jur. 2d, *Products Liability* § 596 (1984). In turn, the retail seller would have to sue the wholesaler, who would in turn have to sue the manufacturer. *Tedder*, 270 N.C. 301, 154 S.E. 2d 337. This particular view has been rejected by a large and growing number of jurisdictions. 63 Am. Jur. 2d, *supra*, § 632. In fact, our Court in *Kinlaw v. Long Mfg. Co.*, 298 N.C. 494, 259 S.E. 2d 552 (1979) held that privity was not required in an action brought by a purchaser against a manufacturer based on the theory of express warranty. G.S. 99B, our products liability chapter, expressly abrogates this privity requirement in certain cases based on implied warranty. N.C. Gen. Stat. 99B-2(b). Essentially, this enables a plaintiff to bring a direct action against the manufacturer based on a warranty theory absent privity of contract. These facts further support the conclusion that this statute was intended to apply to both retail sellers and manufacturers.

Plaintiff maintains that the purported effect of G.S. 1-50(6) would be "to abolish plaintiff's right of action against the manufacturer, defendant Long, as the party whose original negligence in the design, manufacture and sale of the tobacco harvester proximately resulted in the death of plaintiff's intestate. Correspondingly, plaintiff's right of action against defendant Revels Tractor Company, Inc., as the unfortunate retail seller of Long's defective product, is preserved." This argument by plaintiff does not persuade this Court that the statute is violative of either the State or Federal Constitution, since the statute does not distinguish between manufacturers and retail sellers of products who are protected from liability beyond the six-year period of repose. Furthermore, plaintiff's argument that an individual is not included within G.S. 1-50(6) is also meritless. Section 99B-1(4) provides that an individual is a seller within the meaning of the statute, if that individual is "engaged in the business of selling a product, whether such sale is for resale or for use or consumption." Thus, plaintiff's argument that the statute impermissibly distinguishes between these two groups is unpersuasive.

Within this equal protection argument, Revels and plaintiff also contend that Section 1-50(6) is unconstitutional, because it relieves the original manufacturer of liability, and then shifts all such liability to the subsequent supplier or dealer who is not protected by Section 1-50(6). In other words, Revels argues that even though the plaintiff's claim against the manufacturer might be barred by the six-year statute of repose, the cross-claim of a subsequent dealer or supplier should not be barred by Section 1-50(6). Section 1-50(6) clearly provides that *"no action* for the recovery of damages . . . based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than six years after the date of initial purchase for use or consumption." It is clear from this language that Section 1-50(6) excludes *all actions* brought after six years, whether these actions are first-party actions, cross-claims or counterclaims.

Furthermore, the mere characterization of the claimant's claim should not govern the applicability of the statute of repose contained in G.S. 1-50(6). Defendant Revels contends that since it occupies the position of a cross-claimant, its claim should survive the prohibition of Section 1-50(6), even though the first-party claimant's claim does not survive. This is merely an argument of form over substance. Taking defendant Revels' argument to its logical conclusion, the door would easily be opened to avoid the impact of Section 1-50(6). The legislative intent would be thwarted if this Court allowed Revels to do indirectly what it could not do directly, and the chief virtue of the statute, its certainty, would be destroyed. Therefore, we reject Revels' and plaintiff's equal protection argument.

B.

[3]   Closely related to the parties' equal protection argument is plaintiff's claim that G.S. 1-50(6) grants "exclusive or separate emoluments or privileges" to the persons it protects in violation of Article I, § 32, of the North Carolina Constitution. This argument is also rejected.

This Court in *Lamb* addressed a similar challenge to G.S. 1-50(5), a statute of repose "designed to limit the potential liability of architects, contractors, and perhaps others in the construction industry for improvements made to real property." *Id.* at 427-28, 302 S.E. 2d at 873. Excluded from the protection of the statute

were materialmen, suppliers, manufacturers, and persons in actual possession and control of the property. Our Court held that the distinction between the groups was valid and constitutionally permissible. "The legislature could reasonably adjudge that the public welfare would be best served by the classification it chose to make. Therefore, the classification does not create a special emolument or privilege within the meaning of the constitutional prohibition." *Id.* at 439, 302 S.E. 2d at 879.

In the case *sub judice*, the statute does not on its face create a distinction between the groups as contended by plaintiff. Therefore, it does not create a special emolument or privilege within the meaning of the constitutional prohibition. Accordingly, we do not find the statute unconstitutional on this ground.

## C.

[4] Plaintiff's next constitutional challenge is that the statute violates Article I, § 18, of the North Carolina Constitution, which states:

> *Courts shall be open.* All courts shall be open; every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law; and right and justice shall be administered without favor, denial, or delay.

Plaintiff argues that the effect of the statutory scheme is to bar the claim for plaintiff's intestate's death before the death ever occurred, thus denying her a remedy "for an injury done" in violation of Article I, § 18, of the North Carolina Constitution. This argument is also rejected.

In our recent case of *Lamb*, 308 N.C. 419, 302 S.E. 2d 868, an identical attack was made upon G.S. 1-50(5), discussed in Section B, *supra*. This Court concluded that G.S. 1-50(5) did not violate the "open courts" provision of our constitution. "We do not believe it correct to say that the statute bars a claim before the injury giving rise to the claim occurs. The statute's effect is that unless the injury occurs within the six-year period, there is no cognizable claim." *Id.* at 440, 302 S.E. 2d at 880. A well-reasoned analysis of opinions from other jurisdictions was included in *Lamb*. Ultimately, we rejected plaintiff's argument in that case.

In *Lamb* this Court further observed that "the legislature might pass a statute of repose that had a time period so short that it would effectively abolish all potential claims." *Id.* at 444, 302 S.E. 2d at 882, n. 7.

However, we are not convinced that this would occur in cases involving older durable goods, such as the tobacco harvester involved in the present case. In fact, in claims against manufacturers of older durable goods, "over 97 percent of product-related accidents occur within six years of the time the product was purchased . . . ." Mod. Unif. Prod. Liab. Act, Sec. 110 analysis, *reprinted in* 44 Fed. Reg. 62,714, at 62,733 (1979) citing Ins. Servs. Office, 1977 Products Liability Closed Claims Survey: A Technical Analysis of Survey Results; *see also* 1981 Legislative Research Commission Products Liability, Report of the General Assembly of North Carolina ("[N]ationwide data shows that most claims are filed before that [6-year] period is up. . . ." *Id.* at 5).

The enactment of the statute of repose was generally intended to shield these manufacturers of durable goods from "open-ended" liability created by allowing claims for an indefinite period of time after the product was first sold and distributed. Mod. Unif. Prod. Liab. Act *supra, reprinted in* 44 Fed. Reg., at 62,733.

> The advantages of these statutes are that they: (1) establish an actuarially certain date after which no liability can be assessed; and (2) eliminate tenuous claims involving older products for which evidence of defective conditions may be difficult to produce.

*Id.* (Citation omitted.)

The foregoing analysis and reasoning persuade us that plaintiff's constitutional challenge based upon the open courts provision of the North Carolina Constitution must be rejected.

### D.

[5] Plaintiff's final challenge to G.S. 1-50(6) is that the built-in "accrual" date language—"initial purchase for use or consumption"—is unconstitutionally vague. Plaintiff maintains that reasonable arguments could be advanced for three separate dates as constituting the date of "initial purchase for use or consumption": (1) 1 July 1974, at which time defendant Long sold the Long

tobacco harvester to Quality Tractor Sales & Service; (2) 7 March 1975, at which time Quality Tractor Sales & Service sold the Long tobacco harvester to Jimmy Ray Casey; (3) 7 July 1981, at which time Revels Tractor Company, Inc., sold the Long tobacco harvester to plaintiff's intestate. Furthermore, plaintiff urges this Court, if it should determine that the statute is not unconstitutionally vague, to interpret the phrase to mean that 7 July 1981 was the "initial purchase."

Keeping in mind that plaintiff's challenge is based upon the application of the statute to defendant manufacturer, we do not find such language to be unconstitutionally vague. In construing this language, the normal rules of statutory construction apply: the intent of the legislature controls; words in a statute are normally given their natural and recognized meanings; and the statute will be interpreted so as to avoid absurd consequences. *Sheffield v. Consolidated Foods Corp.*, 302 N.C. 403, 276 S.E. 2d 422 (1981) (citations omitted).

The statute of repose was enacted as a part of the products liability act, which was the legislature's "response to the upheaval in product liability law of the 1970's." T. Dworkin, *Product Liability of the 1980's: "Repose is Not the Destiny" of Manufacturers*, 61 N.C. L. Rev. 33 (1982). The number of suits being brought against manufacturers was increasing during this period of time and the legislature sought to curtail such suits and to limit the manufacturers' liability by enacting product liability reform statutes.

> Proponents of statutes of repose contend that the most significant problem for industry in product liability actions is the long 'tail' or period of potential liability, facing manufacturers and sellers of products. Permitting a person to bring a product liability action within an indefinite period of time after the product reaches the stream of commerce subjects the *seller or manufacturer* to potential liability for an unlimited time after *his* contact with the product has ended. Manufacturers favor statutes of repose because they eliminate the 'tail' problems of older products.

F. McGovern, *The Variety, Policy and Constitutionality of Product Liability Statutes of Repose*, 30 Am. U. L. Rev. 579, 593 (1981). (Emphases added.)

Thus, the obvious intent of the legislature in cases like the present one was to limit Long's, the manufacturer's, liability after a certain period of years had elapsed from the date of initial purchase for use or consumption. "Initial" is defined in Webster's Third New International Dictionary (1976) to mean "of or relating to the beginning: marking the commencement: incipient, first." The first purchase in this case "for use or consumption" was by farmer Casey. If plaintiff's argument was adopted and every consumer's subsequent purchase was characterized as an "initial" purchase, then the manufacturer's liability could extend indefinitely. Such a result would certainly defeat the intent of the legislature to limit the manufacturer's liability at some definite point in time. It would also produce an absurd consequence, since each new purchase by a party would effectively extend the time within which that party could commence an action against the original manufacturer. This, of course, could extend for an indefinite number of years, since some products have a useful life of many years in excess of six years.

By interpreting the statute in this manner, the manufacturer's potential liability would extend "for an unlimited time after *his* contact with the product has ended." McGovern, *supra* (emphasis added). There is no controversy regarding farmer Casey's purchase of the tobacco harvester for use or consumption. Therefore, in plaintiff's action against defendant Long, the manufacturer, the initial purchase for use or consumption was made by farmer Casey on 7 March 1975, more than six years prior to the time plaintiff commenced her action against defendant Long. We do not find this language to be unconstitutionally vague. Therefore, plaintiff's argument is rejected.

Defendant Revels raises an additional argument in its brief regarding an interpretation of this statute as applied to Revels' cross-action. However, for the purposes of this appeal, the dispositive issues concern the constitutionality of the statute as applied to plaintiff's action. As stated earlier in this opinion, the parties stipulated that summary judgment would only be proper if *plaintiff's action* is barred by the statute. We have already determined that the statute is constitutional and that plaintiff's action is barred. Therefore, we find it unnecessary to address Revel's final argument.

### III.

As was true in *Lamb*, there is authority from other jurisdictions that will support both plaintiff's and Long's arguments herein. Recently, an appellate court in Indiana was faced with almost identical attacks against that state's statute of repose for products liability actions. *Scalf v. Berkel, Inc.*, --- Ind. App. ---, 448 N.E. 2d 1201 (1983). In that case a meat market employee brought a product liability action against the manufacturer of a meat grinding machine. The trial court granted defendant's summary judgment motion based upon the statute of repose, both parties agreeing "that the meat grinder [had been] delivered to the initial user or consumer more than ten years prior to the occasion of [plaintiff's] injury . . . ." *Id.* at ---, 448 N.E. 2d at 1202.

All of plaintiff's constitutional challenges to the statute of repose were very similar to those advanced by plaintiff in this case. The court in that case also rejected all of the challenges to the statute. Using a rational relationship test, the court concluded that the limitation period was reasonably related to the purpose of the statute, namely, "to eliminate problems associated with obtaining product liability [insurance] protection." *Id.* at ---, 448 N.E. 2d at 1206.

The constitutionality of G.S. 1-50(6) was challenged recently in a suit filed in the United States District Court for the Eastern District of North Carolina. *Brown v. General Electric Co.*, 584 F. Supp. 1305 (E.D.N.C. 1983). In that case, plaintiffs contended that as applied to them the statute violated the due process clause and on its face was violative of the equal protection clause of the Federal and North Carolina constitutions. Plaintiffs also argued that the statute violated the "open courts" provision of the North Carolina constitution. The District Court granted summary judgment for all defendants, including the manufacturer, after viewing G.S. 1-50(6) as a statute of repose and an absolute bar to plaintiffs' products liability action. *Id.* The Fourth Circuit Court of Appeals, in a per curiam opinion, affirmed the District Court, rejecting plaintiffs' constitutional challenges to the statute as did the court below. *Brown v. General Electric Co.*, 733 F. 2d 1085 (1984) (per curiam).

Similar challenges have been launched against statutes of repose in other jurisdictions and also rejected. *Wayne v. Ten-*

---
**Tetterton v. Long Manufacturing Co.**
---

*nessee Valley Authority*, 730 F. 2d 392 (5th Cir. 1984); *Mathis v. Eli Lilly and Co.*, 719 F. 2d 134 (6th Cir. 1983); *Groth v. Sandoz, Inc.*, 601 F. Supp. 453 (D. Neb. 1984); *Drague v. Piper Aircraft Corp.*, 275 Ind. 520, 418 N.E. 2d 207 (1981); *Reeves v. Ille Electric Co.*, 170 Mont. 104, 551 P. 2d 647 (1976); *Josephs v. Burns*, 260 Or. 493, 491 P. 2d 203 (1971); *Freezer Storage, Inc. v. Armstrong Cork Co.*, 476 Pa. 270, 382 A. 2d 715 (1978); *Harrison v. Schrader*, 569 S.W. 2d 822 (Tenn. 1978). Additionally, we recognize that there have been decisions contra in other jurisdictions. *Lankford v. Sullivan*, 416 So. 2d 996 (Ala. 1982); *Battilla v. Allis Chalmers Mfg. Co.*, 392 So. 2d 874 (Fla. 1980); *Overland Construction Company v. Sirmons*, 369 So. 2d 572 (Fla. 1979); *Saylor v. Hall*, 497 S.E. 2d 218 (Ky. 1973); *Kennedy v. Cumberland Engineering Co.*, --- R.I. ---, 471 A. 2d 195 (1984) (dissenting opinion); *Daugaard v. Baltic Cooperative Building Supply Association*, 349 N.W. 2d 419 (S.D. 1984) (dissenting opinion).

The lengthy and well-reasoned dissenting opinion authored by Justice Murray in *Kennedy* strongly criticized the majority for invalidating Rhode Island's statute of repose for products liability actions. Essentially, the dissent maintained that the result reached by the majority was incorrect and premised upon faulty reasoning in several areas. Justice Murray stated in his dissent:

> Charles Kennedy's injuries invoke sympathy and compassion. However, emotional concern in the absence of a clear constitutional mandate does not justify ambiguity in the field of products liability.

> In my view, policy determinations concerning economic issues are most properly made in the legislative arena where all the factors surrounding a particular problem may be weighed. When the Legislature is properly concerned with balancing competing interests to ensure a stable market for the manufacture of basic products and acts to do so by enacting a statute of repose, our inquiry should end. Our Legislature is at least as competent as this Court in making economic policy determinations.

*Kennedy*, 471 A. 2d at 206 (dissenting opinion).

As was stated in *Lamb*:

[T]he General Assembly is the policy-making agency of our government, and when it elects to legislate in respect to the subject matter of any common law rule, the statute supplants the common law rule and becomes the public policy of the State in respect to that particular matter.

308 N.C. at 444, 302 S.E. 2d at 882 (citation omitted). As in that case, we reject the parties' constitutional challenges to the statute.

Accordingly, the decision of the Court of Appeals is

Modified and affirmed.

Justice VAUGHN did not participate in the consideration or decision of this case.