John B. GARDNER and Atha L. Gardner, Plaintiffs,

v.

ASBESTOS CORPORATION, LTD.; Bell Asbestos Mines, Ltd.; and Cassiar Mining Corporation, Defendants.

Civ. A. No. C–C–83–0723–P.

United States District Court, W.D. North Carolina, Asheville Division.

March 4, 1986.

Leonard T. Jernigan, Jr., Raleigh, N.C., and Michael Brickman, Blatt and Fales, Barnwell, S.C., for plaintiffs.

J.A. Gardner, III, Hedrick, Feerick, Eatman, Gardner & Kincheloe, Charlotte, N.C., and David G. Traylor, Jr. and William S. Davies, Jr., Nelson, Mullins, Grier and Scarborough, Columbia, S.C., for defendants Asbestos Corp., Ltd. and Bell Asbestos Mines, Ltd.

James F. Blue, III, Asheville, N.C., and David Bears, Shea and Gardner, Washington, D.C., for defendant Cassiar Mining Corp.

## MEMORANDUM OF DECISION

SENTELLE, District Judge.

■ THIS ACTION and several other asbestos disease[1] cases currently pending in this district are before the Court under diversity jurisdiction pursuant to Title 28, U.S.Code, Section 1332. It is undisputed that the law of North Carolina applies to this action as to the other pending cases. All or most of the cases raise the question of the applicability of North Carolina General Statutes (N.C.G.S.) § 1–50(6), the Products Liability "Statute of Repose" enacted in 1979. In this case that question is raised by defendant Cassiar Mining Corporation's (formerly Brinco Mining, Ltd.) Motion for Partial Summary Judgment. The motion is based upon the contention that the statute of repose bars recovery for injuries caused by exposure to asbestos sold by the defendant more than six (6) years before the commencement of the lawsuit. That statute provides:

> No action for the recovery of damages for personal injury, death or damage to property based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than six years after the date of initial purchase for use or consumption.

Unlike a statute of limitations which bars a plaintiff's right to recovery after a period of time subsequent to the injury, the effect of a statute of repose is that unless the injury occurs within a six-year period de-

---

1. This term is used collectively to refer to asbestosis, mesothelioma and any other disease alleged to be caused by exposure to asbestos.

fined by the sale of the product there is no justicable claim. *Lamb v. Wedgewood South Corp.*, 308 N.C. 419, 302 S.E.2d 868 (1983). Defendants contend that the above language is applicable to asbestos disease cases and that therefore plaintiffs, in order to recover from the manufacturer or seller of asbestos, must act within six years of the time of the last sale, as well as within the three-year statute of limitation commencing with the date of the injury imposed by N.C.G.S. 1–52. Defendant argues that on the facts of this case at least a portion of plaintiffs' claim is time barred by reason of the statute of repose.[2]

Consideration of this argument requires a brief review of the facts before the Court drawn from the materials presented by each side under Rule 56. It seems that certain material facts are not in dispute. Plaintiff John B. Gardner was employed at the "Marshville Plant" from 1948 through 1980 and worked primarily in the "weave room." During the course of his employment he was exposed from time to time to asbestos fibers supplied by the various defendants. Brinco (predecessor in interest to Cassiar Mining) made separate sales of raw asbestos fibers to the owners of the Marshville Plant periodically from 1954 until well after termination of plaintiff's relevant employment.

Therefore, if defendant is correct in its argument as to law, Gardner's claim, together with his wife's derivative claim, will be time barred as to the recovery of any damages resulting from Mr. Gardner's exposure to asbestos fibers sold by Brinco to the Marshville Plant more than six years prior to the commencement of this action in 1983.

In support of its proposition that this is in fact the effect of Section 1–50(6), defendant offers the decision of this Court in *Hyer v. Amatex Corp.*, No. A–C–81–289 (W.D.N.C. Oct. 17, 1983) and the decision of the Eastern District of North Carolina in *Silver v. Johns Manville Corporation*, No. 81–16–CIV–2 (E.D.N.C. March 16, 1984).

In both of those decisions the presiding judges faced the same question before the Court in this case. Simply put, although not simply decided, that question is: What would the North Carolina Supreme Court hold with reference to the applicability of N.C.G.S. 1–50(6) to asbestos disease cases? Therefore, the task of the Court in each of those cases and in this one was not to determine whether that statute of repose should apply but rather to forecast what the North Carolina Supreme Court's decision would be should it be faced with answering the same question. In each of those cases the Court ruled that the statute did apply and that the claims in those cases were barred. This Court would find those cases persuasive authority were there not a basis in North Carolina decisional law bearing upon this forecast today which was not available at the time of the decisions in *Hyer* and *Silver.*

Since those decisions, the North Carolina Supreme Court has rendered its decision in the case of *Wilder v. Amatex Corp., et al.*, 314 N.C. 550, 336 S.E.2d 66 (1985). While that case was an asbestos-related disease claim, it arose before the enactment of the statute in the instant case and therefore did not expressly involve its construction. However, in that decision the North Carolina Supreme Court was determining the applicability of a predecessor statute—N.C. G.S. 1–15(b) (Interim Supp.1976) (repealed 1979). That statute in effect at all times material to the *Wilder* controversy provided:

(b) Except where otherwise provided by statute, a cause of action, other than one for wrongful death or one for malpractice arising out of the performance or failure to perform professional services, having as an essential element bodily injury to the person or a defect or damage not readily apparent to the claimant at the time of its origin, is deemed to have accrued at the time the injury was discovered by the claimant, or ought reasonably to have been discovered by him,

---

**2.** Plaintiff Atha L. Gardner's claim is for loss of consortium and is derivative to John B. Gard-ner's claim, so that all discussion of his claim is applicable to both.

whichever event first occurs; provided that in such cases the period shall not exceed ten years from the last act of the defendant giving rise to the claim for relief.

The material facts of *Wilder* closely parallel those in the case at bar; that is, plaintiff Wilder, like John B. Gardner, was able to demonstrate at the summary judgment stage exposure to asbestos-containing products during the years preceding diagnosis of his asbestos disease. Defendants, like Cassiar, were able to demonstrate sales of the product occurring and/or ceasing prior to the trigger year of the applicable statute of repose. Defendants moved for summary judgment based on the statute of repose and the trial Court allowed the motion. Justice Exum for the North Carolina Supreme Court stated the question before that Court as "Whether entry of summary judgment in favor of defendants ... was proper depends on whether N.C.Gen.Stat. § 1–15(b) ... applies to claims arising out of disease." The Court goes on to determine that the North Carolina Legislature did not intend that statute to apply to claims arising out of a disease. In determining intent of the Legislature the Court looked to the statute's purpose, the state of the law to which the statute was addressed and the changes in that law that the statute was designed to effect. It noted that the statute was not intended to be a limitation governing all negligence claims but that its primary purpose was to change the accrual date for the running of the period of limitations on latent injury claims and the adding of a 10–year statute of repose applying only to latent injury claims.

The Court began with a discussion of *Raftery v. Construction Co.*, 291 N.C. 180, 230 S.E.2d 405 (1976). The Court reviewed the case law prior to the 1971 enactment of Section 1–15(b) and determined that the statute's purpose was to give relief to the harsh results created by former case law. *Raftery* reviewed several cases which had established the rule that the statute of limitations began to run as soon as the physical injury was inflicted, even though

the injured claimant may have been justifiably unaware that he had a cause of action. *Jewell v. Price*, 264 N.C. 459, 142 S.E.2d 1 (1965); *Motor Lines v. General Motors Corp.*, 258 N.C. 323, 128 S.E.2d 413 (1962); *Shearin v. Loyd*, 246 N.C. 363, 98 S.E.2d 508 (1957); *Lewis v. Shaver*, 236 N.C. 510, 736 S.E.2d 320 (1952).

*Shearin* and *Lewis* were medical malpractice cases where the Court found that the claims accrued when the injuries to the claimants first occurred (surgery) rather than when the claimants discovered the injuries. *Motor Lines* and *Jewell* involved purchases of defective products, and the Court found that claimants were first injured (suffered some loss) at the time of purchase of the defective products whether or not the purchasers knew of the defect. *Raftery* concluded that the enactment of Section 1–15(b) was to enlarge the time in which an action for damages could be brought. *Id.*, 291 N.C. at 209–10. The Court also found that the Legislature added a balancing feature—the ten-year statute of repose—to protect manufacturers from claims for ancient acts. From the language of the statute, *Raftery* found that the statute of repose applied only to latent injuries. The Court allowed recovery for injury from a harvester sold 19 years earlier when the claim had been brought within three years of injury.

The Court in *Wilder* noted that none of the cases toward which the statute was directed involved disease. The Court went on to say that the Legislature, being fully aware of the distinction between disease cases and other injury cases, did not intend the statute of repose to apply to disease cases. *Wilder* (Slip Op. at 10). While the Court in *Wilder* was construing Section 1–15(b) and not Section 1–50(6), the reasoning in this decision is of use in construing Section 1–50(6).

In *Wilder*, the Court held as follows: A disease presents an intrinsically different kind of claim. Disease such as asbestosis, silicosis, and chronic obstructive lung disease normally develops over long periods of time after multiple exposures

to offending substances which are thought to be caustic agents. It is impossible to identify any particular exposure as the "first injury." Indeed, one or even multiple exposures to an offending substance in these kinds of diseases may not constitute an injury. The first *identifiable* injury occurs when the disease is diagnosed as such, and at that time it is no longer latent. *See generally Borel v. Fiberboard Paper Products Corp.*, 493 F.2d 1076, 1083 (5th Cir. 1973), *cert. denied*, 419 U.S. 869 [95 S.Ct. 127, 42 L.Ed.2d 107] (1974) (asbestosis; disease does not generally manifest itself until "ten to twenty-five or more years after exposure"). (Emphasis in original). *Id.*, At 70.

The Court in *Wilder* found that the Legislature has almost always equated the disease's manifestation on diagnosis as the injury giving rise to the cause of action. *Id.*, At 71. Since this would be the only point to measure the "first injury," the Court found that disease claims were not latent injury claims and, therefore, the statute of repose had no applicability to them. *Wilder* At 72. "It is inconceivable that the Legislature enacted G.S. 1–15(b) in 1971 intending that claims for injuries caused by disease accrue before the disease is diagnosed." *Wilder* At 72.

The Court then went on to support its decision with the fact that the original draft of Senate Bill 572 included specifically the language "disease, damage or injury is diagnosed." The final adopted bill left "disease" out altogether. "[I]t is always presumed that the Legislature acted with care and deliberation and with full knowledge of prior and existing law." *State v. Benton*, 276 N.C. 641, 174 S.E.2d 793, 804 (1970). This bolstered the Court's opinion that G.S. 1–50(5) as written did not apply to disease cases.

In the case at hand, defendant Cassiar argues that the decision in *Wilder* has no bearing on the applicability of Section 1–50(6) as Section 1–15(b) in *Wilder* applied only to latent injury cases while Section 1–50(6) as written applies to all actions for personal injury, death, or property damage arising from a defect or failure in relation to a product. *Tetterton v. Long*, 67 N.C. App. 628, 313 S.E.2d 250 (1984), modified 314 N.C. 44, 332 S.E.2d 67 (1984); *Bernick v. Jurden*, 306 N.C. 435, 293 S.E.2d 405, 415. This includes damage "caused by or resulting from the manufacture, construction, design ... warning, instructing, marketing, selling, advertising, packaging or labeling of any product." *Tetterton*, 332 S.E.2d at 70, quoting N.C.G.S. 99B–1(3).

While it is true as defendants argue that the purpose of Section 1–50(6) is broad in its protection of manufacturers and vendors from the results of long forgotten acts, nothing in the legislative history cited to the Court by defendant gives any indication that the Legislature intended to expand the definition of personal injury beyond that intended in the statute construed in *Wilder*. It appears to this Court that an accurate forecast of the North Carolina Supreme Court's construction of Section 1–50(6) is most plainly instructed by the Court's construction·of the earlier statute of repose. That decision makes it plain in the language quoted above that the State Supreme Court does not consider disease to be included within a statute of repose directed at personal injury claims unless the Legislature expressly expands the language to include it.

For the reason of the enlightenment offered by the *Wilder* decision, if only for that reason, this Court must disagree with the *Hyer* and *Silver* cases decided prior to the enlightenment offered by *Wilder* and rule that North Carolina's statute of repose does not apply to cases of asbestos disease.

In case any question remains as to the applicability of the general statute of limitations, that question likewise is answered in the *Wilder* decision. "The first *identifiable* injury occurs when the disease is diagnosed as such, and at that time it is no longer latent." (Emphasis in the original.) Since in the case at bar it does not appear to be established that the disease was diagnosed as such at a time more than three years before the bringing of the action the general statute of limitations is not a bar.

In opposition to the motion for summary judgment, plaintiffs have also argued that the statute of repose if applied to asbestos disease cases would be unconstitutional in that application is a violation of Article I, Section 18 of the North Carolina State Constitution, commonly called the "Open Courts" provision. Since this Court now holds that the statute does not apply, it is not necessary to reach the constitutional question. Indeed, it is necessary not to reach it since the Supreme Court of North Carolina would not under like circumstances. "[A]ppellate courts will not pass on constitutional questions, even when properly presented, if there be also present some other ground upon which the case may be decided. (Citations omitted)." *State v. Jones,* 242 N.C. 563, 89 S.E.2d 129 (1955).[3]

For the reasons stated above, defendant's Motion for Partial Summary Judgment is denied. The Court notes that this same reasoning is applicable to a number of other asbestos disease cases now pending before the Court in File No. WDCP-88-1, In Re: Asbestos Related Litigation, and the Clerk of Court is directed to provide copies of this Memorandum to counsel in all those cases.

---

**3.** This case remains viable law and has been cited with approval as recently as 1985 in *State* *v. Creason,* 313 N.C. 122, 326 S.E.2d 24 (1985).