**Winbert E. GUY, Appellant,**

v.

**E.I. DuPONT de NEMOURS & CO., a Delaware corporation; Mobay Chemical Corp., a New Jersey corporation, Appellees.**

**No. 85–1462.**

United States Court of Appeals, Fourth Circuit.

Argued April 9, 1986.

Decided June 6, 1986.

---

Charles R. Hassell, Jr., Raleigh, N.C., for appellant.

Walter E. Brock, Jr., Raleigh, N.C. (David M. Duke, Kinston, N.C., Jerry S. Alvis, Young, Moore, Henderson & Alvis, P.A., Robert V. Bode, Bode, Bode & Call, Raleigh, N.C., C. Arthur Wilson, Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., on brief), for appellees.

Before HALL, MURNAGHAN, and SPROUSE, Circuit Judges.

K.K. HALL, Circuit Judge:

Winbert E. Guy appeals from an order of the district court, denying his motion to amend the complaint in this products liability action brought in diversity, and granting defendants' motions for judgment on the pleadings. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I.

From 1950 until July 18, 1975, Guy was employed in the maintenance department of Burlington Industries' Fayetteville Fabrics Plant ("Burlington") in Fayetteville, North Carolina. One of his duties was to finish floors with products marketed by E.I. DuPont de Nemours and Company ("DuPont") and manufactured by Mobay Chemical Corporation ("Mobay"), including products containing the chemical diisocyanate. According to Guy, while employed, he was never informed that he was exposed to diisocyanate nor made aware of any harmful effects caused by breathing diisocyanate fumes. Guy asserts that he developed breathing problems in the 1960's, was diagnosed in 1978 as suffering from asthma, and suffers from chronic obstructive lung disease.

On June 18, 1984, Guy filed this action against DuPont and Mobay alleging theories of negligence and strict liability, and claiming that his exposure to their products resulted in permanent and disabling lung disease. Both defendants asserted defenses based upon North Carolina's statute of repose for products liability actions and its statute of limitations for personal injury actions. Defendants then moved under Fed.R.Civ.P. 12(c) for judgment on the pleadings on October 3, 1984.

In the meantime, plaintiff, pursuant to Fed.R.Civ.P. 15, moved for leave to amend his complaint to add new claims of breach of warranties, fraud, and civil conspiracy. The proposed amendment also alleged for the first time that plaintiff did not learn of his exposure to diisocyanate or of its harmful effects on the lungs until June 18, 1981, when that information was provided by a physician employed by Burlington as the plant's Director of Health and Safety.

In its order addressing the parties' motions, the district court concluded that Guy's claims were barred by N.C.Gen.Stat. § 1–50(6), a six-year statute of repose which became effective for products liability claims accruing after October 1, 1979. Under this statute:

No action for the recovery of damages for personal injury, death or damage to property based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than six years after the date of initial purchase for use or consumption.

The district court reasoned that because plaintiff's last exposure to defendants' products occurred on July 18, 1975, his action should have been filed no later than July 18, 1981, in order to avoid the bar of N.C.Gen.Stat. § 1–50(6). The court went on to find that to the extent plaintiff claimed that his cause of action accrued before October 1, 1979, the effective date of N.C.Gen.Stat. § 1–50(6), this action was barred by the three-year statute of limitations under N.C.Gen.Stat. § 1–52.

Finally, the district court denied plaintiff leave to amend his complaint, concluding that he had failed to allege intent to deceive and affirmative misrepresentation to support his new claims of fraud and civil conspiracy. The district court further found that Guy did not have a fiduciary, contractual, or other express relationship with defendants to state a claim for fraudulent concealment. The district court determined that under these circumstances any attempt to amend the complaint would be futile.

This appeal followed.

## II.

On appeal, Guy contends that his claims against defendants are not barred by North Carolina's statute of repose or by the statute of limitations. Appellant also argues that the district court erred in denying him leave to amend his complaint. We agree with appellant that neither the statute of repose nor the statute of limitations bars his claims against defendants for the pulmonary disease allegedly caused by the use of their products. We also agree that to the extent appellant's motion for leave to amend his complaint responded to the affirmative defense of limitations the motion should have been granted. In all other respects, we find no abuse of discretion in the denial of the motion for leave to amend.

The statute of repose question raised by Guy has been addressed by this Court in two recent decisions, which were handed down after oral argument in the present case, *Hyer v. Pittsburgh Corning Corporation*, 790 F.2d 30 (4th Cir.1986), and *Silver v. Johns Manville Corporation*, 789 F.2d 1078 (4th Cir.1986). *Hyer* and *Silver* involved in one instance a plaintiff and in the other a plaintiff's decedent, both of whom had contracted asbestosis. The defendants in each case were the manufacturers of asbestos products to which the injured parties had been exposed during the course of their employment. In both cases, the last exposure to the defendants' products had occurred more than six years before the respective actions were filed, and the district courts considering the claims had concluded that they were barred by N.C.Gen.Stat. § 1–50(6).

In reversing those rulings, this Court was called upon to interpret the recent decision of the Supreme Court of North Carolina in *Wilder v. Amatex Corporation*, 314 S.Ct. 550, 336 S.E.2d 66 (1985), which held that an earlier statute of repose, N.C.Gen.Stat. § 1–15(b) (Interim Supp.1976) (repealed 1979),[1] did not apply to claims arising out of disease. *Wilder*, like *Hyer* and *Silver*, involved an asbestos-related disease claim against the manufacturers of asbestos products. In reaching its decision, the North Carolina Supreme Court concluded that:

> None of the cases toward which the statute was directed involved disease. They all involved situations in which it was possible to identify a single point in time when plaintiff was first injured.

> A disease presents an intrinsically different kind of claim. Diseases such as asbestosis, silicosis, and chronic obstructive lung disease normally develop over long periods of time after multiple exposures to offending substances which are thought to be causative agents. It is impossible to identify any particular exposure as the "first injury." Indeed, one or even multiple exposures to an offending substance in these kinds of diseases may not constitute an injury. The first

---

1. N.C.Gen.Stat. § 1–15(b) provided that:

   Except where otherwise provided by statute, a cause of action, other than one for wrongful death or one for malpractice arising out of the performance or failure to perform professional services, having as an essential element bodily injury to the person or a defect in or damage to property which originated under circumstances making the injury, defect or damage not readily apparent to the claimant at the time of its origin, is deemed to have accrued at the time the injury was discovered by the claimant, or ought reasonably to have been discovered by him, whichever event first occurs; provided that in such cases the period shall not exceed ten years from the last act of the defendant giving rise to the claim for relief.

*identifiable* injury occurs when the disease is diagnosed as such, and at that time it is no longer latent. *See, generally, Borel v. Fiberboard Paper Products Corp.*, 493 F.2d 1076, 1083 (5th Cir.1973), *cert. denied*, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974) (asbestosis; disease does not ordinarily manifest itself until "ten to twenty-five years or more after exposure"); *Rutledge v. Tultex Corp.*, 308 N.C. 85, 301 S.E.2d 359 (1983) (chronic obstructive lung disease; 24 years' exposure to respirable cotton dust and cigarette smoking ultimately resulted in diagnosis); *Hansel v. Sherman Textiles*, 304 N.C. 44, 283 S.E.2d 101 (1981) (chronic obstructive lung disease, or byssinosis; 34 years' exposure after which disease diagnosed); *Haynes v. Feldspar Producing Co.*, 222 N.C. 163, 22 S.E.2d 275 (1942) (silicosis; 10 years' exposure before disease was diagnosable).

336 S.E.2d at 70–71.

■ In construing N.C.Gen.Stat. § 1–50(6), this Court in *Hyer* and *Silver* found *Wilder* to be controlling and held that where injury or death is alleged to have resulted from disease, the six-year statute of repose is inapplicable.[2] The *Wilder* reasoning, as adopted by this Court in *Hyer* and *Silver*, applies with equal force to the present claim. Chronic obstructive lung disease, such as that alleged by Guy, was specifically cited in the *Wilder* decision, along with asbestosis and silicosis, as a disease to which the statute of repose does not apply. We, therefore, hold that appellant's claims against defendants for the pulmonary disease allegedly caused by exposure to their products are not barred by N.C.Gen.Stat. § 1–50(6). We further conclude that, consistent with *Wilder* and *Hyer*, an action based on the disease-related claims present here are not barred by the statute of limitations for personal injury actions under N.C.Gen.Stat. § 1–52(5), so long as the action is filed within three years after plaintiff's illness is first diagnosed. *Hyer*, at 34. In light of these holdings, we find that the case must be remanded for further proceedings.

## III.

■ We now turn to the question of whether the district court erred in denying leave to amend the complaint. Insofar as the denial was based on appellant's new claims of fraud and civil conspiracy, we perceive no abuse of discretion by the district court. However, we note that both defendants asserted in their respective answers to Guy's complaint a defense based on the applicable statute of limitations. Such an assertion is an affirmative defense under Fed.R.Civ.P. 8(c),[3] which a plaintiff is not required to anticipate. In the amended complaint which he requested leave to file, Guy asserted that he first learned of the possible connection between his alleged lung disease and defendants' products on June 18, 1981. Obviously, this assertion was an attempt to respond to the limitations defense. Under the circumstances present in this case, where Guy was not unduly dilatory in seeking such an amend-

---

**2.** In *Hyer*, at 34, this Court cited with approval the reasoning and conclusions of Judge Sentelle in *Gardner v. Asbestos Corporation, Ltd.*, N.C. 634 F.Supp. 609, 612 (W.D.N.C.1986).

While it is true as defendants argue that the purpose of Section 1–50(6) is broad in its protection of manufacturers and vendors from the results of long forgotten acts, nothing in the legislative history cited to the Court by defendant gives any indication that the Legislature intended to expand the definition of personal injury beyond that intended in the statute construed in *Wilder*. It appears to this Court that an accurate forecast of the North Carolina Supreme Court's construction of Sec-

tion 1–50(6) is most plainly instructed by the Court's construction of the earlier statute of repose. That decision makes it plain ... that the State Supreme Court does not consider disease to be included within a statute of repose directed at personal injury claims unless the Legislature expressly expands the language to include it.

**3.** Fed.R.Civ.P. 8(c) provides in pertinent part as follows:

**Affirmative Defenses.** In pleading to a preceding pleading, a party shall set forth affirmatively ... statute of limitations, ... and any other matter constituting an avoidance or affirmative defense....

ment, we conclude that, pursuant to Fed.R. Civ.P. 15(a),[4] he should have been permitted to amend his pleadings to meet the defense of limitations. *See Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 350, 91 S.Ct. 1434, 1453–54, 28 L.Ed.2d 788 (1971).[5]

### IV.

For the foregoing reasons, we reverse the district court's order insofar as it granted judgment on the pleadings to defendants and denied plaintiff's motion for leave to amend his complaint to refute the affirmative defense based on the statute of limitations. We affirm the order in all other respects and remand the case for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

---

**4.** Fed.R.Civ.P. 15(a) provides that:

A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; *and leave shall be freely given when justice so requires.*
(emphasis added)

**5.** Under *Wilder,* the triggering date for statute of limitations purposes in actions based upon disease-related claims is the date the illness is first diagnosed, after which a plaintiff has three years to bring suit under N.C.Gen.Stat. § 1–52(5). *Hyer v. Pittsburgh Corning Corporation,* 790 F.2d 30, 34. Whether Guy's illness has ever been diagnosed within the meaning of *Wilder* is uncertain at least under the facts which have been pleaded to date. In any event, on remand Guy should be permitted to amend his pleadings to include facts which would refute the affirmative defense of limitations.