Emily **SCHAFFERT** and Nathan Schaffert, by their next Friend, Deena **SCHAFFERT**, Appellants–Plaintiffs,

v.

**JACKSON NATIONAL LIFE INSURANCE COMPANY,** Appellee–Defendant.

No. 45A03–9701–CV–30.

Court of Appeals of Indiana.

Nov. 5, 1997.

Transfer Denied March 25, 1998.

Barry D. Sherman, Kristen D. Hill, Sherman & Allegretti, Hammond, Karl L. Mulvaney, Bingham, Summers, Welsh & Spilman, Indianapolis, for Appellants–Plaintiffs.

Randall J. Nye, Melanie M. Dunajeski, Beckman, Kelly & Smith, Hammond, for Appellee–Defendant.

## OPINION

GARRARD, Judge.

Deena Schaffert on behalf of her children (collectively "Schafferts"), appeals the trial court's grant of summary judgment in favor of Jackson National Life Insurance Co. ("Jackson National"), claiming that the trial court erred by choosing to apply Illinois' substantive law.

We affirm.

## FACTS

The Schafferts' claim against Jackson National involves their attempt to collect, as beneficiaries, proceeds from a life insurance policy that their father, Dr. Paul Schaffert, ("Dr. Schaffert") had applied for with Jackson National. Dr. Schaffert, along with his family, resided in Flossmoor, Illinois, but maintained a medical office in Crown Point, Indiana. Dr. Schaffert first discussed the possibility of purchasing a life insurance policy from Karen Patterson ("Patterson"), an independent insurance agent, in 1991, when Patterson accompanied her husband during his visit to Dr. Schaffert's Crown Point office. Patterson was licensed to do business in both Illinois and Indiana with her place of business in Lansing, Illinois. Over the next two years, Dr. Schaffert and Patterson discussed possible life insurance policies. Several of these discussions occurred when Patterson returned to Dr. Schaffert's Indiana office with her husband. Patterson also mailed proposals from her Illinois office to Dr. Schaffert at his Indiana Office.

Finally, in June of 1993, Dr. Schaffert informed Patterson that he had decided on a $500,000 policy from Jackson National. When Patterson then sent Dr. Schaffert an application for the life insurance policy, Dr. Schaffert knew that he was required to submit to a physical before Jackson National would approve the application. On July 29, 1993, Dr. Schaffert completed the application and mailed it, along with the first premium check, to Patterson at her Illinois office. Patterson, upon receiving the application, countersigned it and mailed Dr. Schaffert an interim receipt. This interim receipt did not contain a choice of law provision.

On August 13, 1993, Timothy Hall, the paramedical examiner assigned to examine Dr. Schaffert, spoke with Dr. Schaffert to set up an examination and was informed by Dr. Schaffert that he would not be available until after August 30th. Sadly, Dr. Schaffert was killed in an automobile accident on August 29, 1993, before he was able to undergo the examination. On September 7, 1993, Jackson National, unaware that Dr. Schaffert had died, made a note in Dr. Schaffert's file that if the results of the examination were not received by September 21st, the file would be closed. Five days later, on September 12th, Jackson National, having learned of his death, denied Dr. Schaffert's application and refunded his premium.

The Schafferts filed suit against Jackson National on May 4, 1994, in Indiana, to recover the life insurance proceeds that Jackson National refused to pay. One year later, on May 5, 1995, the Schaffert's filed a motion for summary judgment, arguing that Indiana's law was the appropriate choice of law and that under Indiana law, a valid life insurance contract had been formed. Jackson National responded with a cross-motion for summary judgment on June 12, 1995, arguing that Illinois law was the appropriate choice of law and that under Illinois law no life insurance contract had been formed. On

June 13, 1996; the trial court held a hearing on the parties' motions and on July 26, 1996, entered its order. In its order, the trial court granted Jackson National's cross-motion for summary judgment, concluding that under the "most intimate contacts" test and the "last act" test, Illinois law was the appropriate choice of law. The trial court then stated that under Illinois law the physical was a condition precedent which had not been met by Dr. Schaffert and, therefore, there was no insurance policy in effect. The Schafferts appeal this order.

## ISSUES

The Schafferts raise two issues on appeal which we restate as:

I. Whether the trial court erred by determining that Illinois law was the appropriate choice of law.

II. Whether the trial court should have declined to apply Illinois law because it violated Indiana's public policy.

## DISCUSSION

When reviewing a trial court's grant or denial of summary judgment, we stand in the shoes of the trial court. *Fifth Third Bank v. Bentonville Farm Supply*, 629 N.E.2d 1246, 1248 (Ind.Ct.App.1994), *reh'g denied, trans. denied.* Summary judgment is only appropriate when "the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." IND.TRIAL RULE 56(C). "Cross motions for summary judgment on the same issues do not alter the standard for granting summary judgment." *Fifth Third Bank*, 629 N.E.2d at 1248. Here the issue is whether the correct law was applied.

The Schafferts argue that the appropriate choice of law is Indiana's law because the purchase of the policy was negotiated in Indiana and because Dr. Schaffert completed and sent the application from his Indiana office. In contrast, Jackson National, focusing on the domicil of Dr. Schaffert, his family, and Patterson's place of business, argues that the trial court correctly ruled that Illinois law was the appropriate choice of law. In the present case, the choice of law is dispositive to the parties' claims. Under Illinois law, the medical examination Dr. Schaffert was required to undergo is considered a condition precedent which must be met before the life insurance policy takes effect. *Garde v. American Family Life Ins. Co.*, 147 Ill.App.3d 1034, 101 Ill.Dec. 110, 113, 498 N.E.2d 292, 295 (1986). Because Dr. Schaffert failed to undergo the examination, under Illinois law, the life insurance policy did not take effect and the Schafferts are not entitled to any death benefits. *Id.* Unlike Illinois law, under Indiana law the Schafferts would be entitled to recover benefits based on the life insurance policy. *Kaiser v. National Farmers Union Life Ins. Co.*, 167 Ind.App. 619, 339 N.E.2d 599, 601 (1976). Indiana law interprets conditional receipts, like the one Dr. Schaffert received, "as creating a temporary or interim contract for insurance subject to a condition subsequent—rejection of the application by the company. Where rejection does not occur, in the case of life insurance, prior to the death of the applicant, the company is liable for the stated amount of proceeds." *Id.* Dr. Schaffert died before he had been notified that his application had been rejected and, therefore, under Indiana law the Schafferts may recover death benefits under the life insurance policy.

When faced with a choice of law question, the decision is made by the courts of the state in which the suit is pending. *Hubbard Mfg. Co., Inc. v. Greeson*, 515 N.E.2d 1071, 1073 (Ind.1987). Indiana's choice of law rule for contract actions is the "most intimate contacts" test.[1] *Eby v. York–*

---

1. This test applies to actions based upon insurance contracts. We reemphasize this point because we believe that *Pennington v. American Family Ins. Group*, 626 N.E.2d 461 (Ind.Ct.App. 1993) may lead to some confusion over whether to use the "most intimate contacts" test or the "last act" test. In *Pennington*, the court correctly stated that the "most intimate contacts" test

governed, but then did not apply it. Instead, the court stated, "[i]n conflict of law cases involving the interpretation of insurance contracts, the law of the state where the contract is executed controls." *Id.* at 465. To support this contention, the *Pennington* majority cited *Travelers Ins. Co. v. Eviston*, 110 Ind.App. 143, 37 N.E.2d 310 (1941), which states that the appropriate test for choice

*Division, Borg–Warner,* 455 N.E.2d 623, 626 (Ind.Ct.App.1983); *Suyemasa v. Myers,* 420 N.E.2d 1334, 1344 (Ind.Ct.App.1981); *Dohm & Nelke v. Wilson Foods Corp.,* 531 N.E.2d 512, 513 (Ind.Ct.App.1988). "As formulated by our supreme court, the rule has been succinctly stated as follows: 'The court will consider all acts of the parties touching the transaction in relation to the several states involved and will apply as the law governing the transaction the law of that state with which the facts are in most intimate contact.'" *Eby,* 455 N.E.2d at 626 (quoting *W.H. Barber Co. v. Hughes,* 223 Ind. 570, 63 N.E.2d 417, 423 (1945)). Quoting the Restatement (Second) of Conflict of Laws § 188, the *Eby* court listed the factors to be considered in this test as: (1) the place of contracting, (2) the place of negotiation, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicil, residence, nationality, place of incorporation and place of business of the parties. *Id.* This test and these factors apply to actions based upon insurance contracts. *See Travelers Ins. Companies v. Rogers,* 579 N.E.2d 1328 (Ind.Ct.App.1991).

Applying the factors set forth in *Eby,* we first look to the place of contracting. In this case, this factor does not aid our inquiry because it is precisely the issue which we must first determine the applicable law in order to decide. To determine whether a contract was legally formed, we must apply either the law of Indiana or Illinois. Because we must apply the substantive law of one of the two states to decide where the place of contracting is, and we need to know the place of contracting to decide which state's substantive law to apply, we are caught in a "catch–22." This first factor is therefore inapplicable. The facts do reveal that the place of negotiation, the second factor, was Indiana. All of the face-to-face discussions occurred in Indiana and Patterson's proposals were mailed to Dr. Schaffert's Indiana office. The third factor, place of performance, is not really applicable because of the nature of life insurance contracts; there was

no act the contract required to be performed. The location of the subject matter of the contract, the fourth factor, also does not aid our analysis. The subject matter of the life insurance contract was Dr. Schaffert's life, which had no fixed location, but instead followed Dr. Schaffert wherever he went. The final, and most important, factor is the domicil or place of business of the parties. Dr. Schaffert and his beneficiaries were domiciled in Illinois. In addition, Patterson's place of business was in Illinois while Jackson National's place of business was Michigan.

Based on these factors, the Schafferts argue that we should focus on Indiana because it was where the negotiations took place, where the application was completed, and from where the premium was sent. The Schafferts claim that these events make Indiana the place of contracting and based on this contact, the appropriate choice of law. "Standing alone, the place of contracting is a relatively insignificant contact." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 cmt. e (1977). The place of contracting alone is relatively insignificant because it is usually one of several contacts in a state and is rarely the sole connection a state will have to the contract. *Id.* In the present case, the fact that the negotiations for the insurance policy and the completion of the application occurred in Indiana are merely fortuitous and relatively insignificant. Dr. Schaffert could just as easily have directed Patterson to send the proposals to his Illinois home and completed the application in Illinois.

■ Jackson National, in contrast, argues that we should focus upon the domicil of Dr. Schaffert and his family and on the place of business of Patterson. Dr. Schaffert and his family were domiciled in Illinois, the same state as Patterson's place of business.

The validity of a life insurance contract issued to the insured upon his application and the rights created thereby are determined, in the absence of an effective choice of law by the insured in his application, by

---

of law in contracts is the "last act" test. The *Pennington* majority appears to have utilized the "last act" test even though it correctly noted that the appropriate test was the "most intimate con-

tacts" test. We explicitly hold that in choice of law questions involving insurance contracts the correct test is the "most intimate contacts" test, not the "last act" test used in *Eviston.*

the local law of the state where the insured was domiciled at the time the policy was applied for, unless, with respect to the particular issue, some other state has a more significant relationship under the principles of § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

*Id.* at § 192. The reason for this rule is that the state in which the insured is domiciled will usually have the dominant interest, as evidenced by its laws related to insurance contracts, in the insured and his beneficiaries. *Id.* at § 192 cmt. c. "Likewise, a major purpose of life insurance legislation is to protect the individual insured and his beneficiaries, and the courts have sought to assist in the achievement of this purpose by means of their choice-of-law rules. They have done so by requiring that, at least as a general rule, the insured should receive the protection accorded him by the local law of his domicil." *Id.* We agree that, in this instance, the interests of Dr. Schaffert's domicil at the time of the completion of the application are paramount. When weighed against the relatively insignificant contact of the place of negotiation, the contact of Dr. Schaffert's domicil is the most intimate. We hold that the trial court correctly ruled that under the "most intimate contacts" test, Illinois law should apply.

■ The Schafferts also argue that even if we find Illinois law to be the appropriate choice of law, the trial court was not required to apply it because it offended Indiana's public policy. Jackson National acknowledges that under Indiana law, in certain circumstances, Indiana courts may decline to apply the law of sister states, but argues that the trial court could not decline to apply Illinois law in this instance because Indiana public policy has not been offended. The Schafferts are correct that Indiana courts need not apply the law of a sister state if that law violates Indiana's public policy. *Maroon v. State Dept. of Mental Health,* 411 N.E.2d 404, 410 (Ind.Ct.App.1980). This ability to decline to apply sister states' laws is not unlimited, however. "In reaching this conclusion we approve the modern and generally accepted doctrine that to justify our courts in refusing to enforce a right of action accruing under the laws of another state as against the policy of this state the prosecution of such action must appear to be against good morals or natural justice, or prejudicial to the general interests of the citizens of this state." *Wabash R. Co. v. Hassett,* 170 Ind. 370, 83 N.E. 705, 709 (1908). In *Maroon,* relied upon by the Schafferts, the court declined to use this doctrine and stated that "[w]e leave the doctrine to its traditional application in cases dealing with, *inter alia,* gaming contracts, lotteries, and marriages within the prohibited limits of consanguinity." *Maroon,* 411 N.E.2d at 412.

The Schafferts argue that because Indiana law would allow the recovery of death benefits, Illinois' denial of recovery violates Indiana's public policy. In essence they argue it is unfair to deny recovery under Illinois law when Indiana would permit it. Their argument must fail. As Justice Cardozo wrote in *Loucks v. Standard Oil Co. of New York* (1918) 224 N.Y. 99, 120 N.E. 198, 201 (quoted with approval in *Maroon*):

> Our own scheme of legislation may be different. We may even have no legislation on the subject. That is not enough to show that public policy forbids us to enforce the foreign right. . . . We are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home.

Schafferts do not argue that Illinois law is immoral or against natural justice. Their contention that we should decline to apply Illinois law merely because the result would be different under Indiana law would extend the doctrine far beyond the limits recognized in *Maroon* and *Hassett.* The trial court properly refused the invitation to decline to apply Illinois law. The grant of summary judgment was proper.

Affirmed.

HOFFMAN and SULLIVAN, JJ., concur.