Michele Lynn ALLI, Individually and as Personal Representative of the Estate of Daren Scott Alli, Deceased, Appellant–Plaintiff,

v.

ELI LILLY AND COMPANY, Appellee–Defendant.

No. 49A05–0602–CV–00103.

Court of Appeals of Indiana.

Sept. 20, 2006.

   Frederick R. Hovde, Hovde Dassow & Deets, LLC, Indianapolis, IN, Attorney for Appellant.

Robert K. Stanley, Alan L. McLaughlin, Andrew L. Campbell, Baker & Daniels LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Michele Lynn Alli ("Michele"), individually and as personal representative of the

estate of her late husband Daren Scott Alli ("Daren"), appeals the trial court's grant of partial summary judgment in favor of Eli Lilly & Company ("Lilly"), the manufacturer of the antidepressant Prozac, in this products liability and wrongful death action. Specifically, Michele contends that the trial court erred in determining that the substantive law of Michigan—which is the state where her late husband lived, worked, was treated for depression, and committed suicide—applies instead of the substantive law of Indiana, which is where Lilly is headquartered. Applying Indiana choice-of-law analysis for tort cases, we conclude that the substantive law of Michigan applies to this case. In addition, because Michigan products liability law, which grants immunity to drug manufacturers unless certain narrow conditions are met, does not violate Indiana's public policy, we decline to apply the public policy exception to this case. We therefore affirm the trial court.

### Facts and Procedural History

Daren and Michele married in 1991 and had two children. Daren was a police sergeant with the Oakland County Sheriff's Department in Oakland County, Michigan. He also served as the co-captain for the county's SWAT team. On May 17, 2001, Daren received 20 mg samples of Prozac from his family physician in Michigan, Dr. Nathan Chase. However, Daren stopped taking Prozac after three days because of the severe side effects, and Dr. Chase prescribed him a new antidepressant. On May 23, 2001, Daren committed suicide in Michigan.

Lilly is a global, research-based pharmaceutical company with corporate headquarters in Indianapolis, Indiana. Lilly conducts clinical research in more than sixty countries, and Lilly's pharmaceuticals are sold worldwide. Lilly is registered to do business in Michigan. In 2001, Lilly maintained a sales office in Southfield, Michigan, and employed approximately 100 Michigan residents. Lilly currently employs nearly 200 Michigan residents.

Prozac (fluoxetine hydrochloride) is a drug that can only be obtained by prescription from a licensed physician. Prozac was the first of a new class of drugs, called selective serotonin reuptake inhibitors (or SSRIs), to be approved for use in the United States. The United States Food and Drug Administration ("FDA") initially approved Prozac for safety and efficacy in the treatment of depression in 1987, and Lilly began selling Prozac in the United States in January 1988. The FDA has never ordered Prozac removed from the market, nor has the FDA withdrawn its approval of Prozac. Prozac and its labeling have always complied with the FDA's approval.

From 1998 to 2001, Lilly's Michigan-based sales representatives called on Dr. Chase at his Michigan office at least 140 times. During twenty-six of these visits, the sales representatives supplied Dr. Chase with 20 mg samples of Prozac for use in connection with his medical practice.[1]

Michele, individually and as personal representative of Daren's estate, filed a Complaint for Damages against Lilly in Marion Superior Court on October 2, 2003. She dubbed the nature of the case as a "products liability and wrongful death action" and set forth three legal theories for recovery: (1) strict products liability; (2) misrepresentation; and (3) negligence. *See* Appellant's App. p. 13, 14–15. Two years later, Lilly filed a motion for partial summary judgment asking the court to rule that the substantive law of Michigan

1. Prozac in 20 mg capsules was manufactured at Lilly's facility in Puerto Rico.

governs the claims in this action. Michele responded that the substantive law of Indiana should apply. Following a hearing, the trial court entered its Order Granting Defendant's Motion for Partial Summary Judgment. Specifically, that order provided, "This court finds that Michigan has a more significant relationship with the case and, therefore, under Indiana choice-of-law rules, Michigan law applies to this case.... There being no good or just reason for delay, this is a final appealable judgment." *Id.* at 12. Michele now appeals.

### Discussion and Decision

Michele contends that the trial court erred in granting partial summary judgment to Lilly. Specifically, Michele argues that the substantive law of Indiana, not Michigan, should apply to this case. On appeal, the standard of review of a grant or denial of a motion for partial summary judgment is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1161 (Ind.2002). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Id.*

■ Choosing the applicable substantive law for a given case is a decision made by the courts of the state in which the lawsuit is pending. *Hubbard Mfg. Co. v. Greeson*, 515 N.E.2d 1071, 1073 (Ind.1987). In tort cases, Indiana choice-of-law analysis involves multiple inquiries. *Simon v. United States*, 805 N.E.2d 798, 804–05 (Ind.2004). As a preliminary matter, the trial court must determine whether the differences between the laws of the states are "important enough to affect the outcome of the litigation." *Id.* at 805 (quoting

*Hubbard*, 515 N.E.2d at 1073). If such a conflict exists, the presumption is that the traditional *lex loci delicti* rule—the place of the wrong—will apply. *Id.* Under this rule, the trial court applies the substantive law of "the state where the last event necessary to make an actor liable for the alleged wrong takes place." *Id. (quoting Hubbard*, 515 N.E.2d at 1073).

■ However, this presumption is not conclusive. *Id.* It may be overcome if the trial court is persuaded that "the place of the tort 'bears little connection' to this legal action." *Id.* (quoting *Hubbard*, 515 N.E.2d at 1074). If the location of the tort is insignificant to the action, the trial court should consider other contacts that may be more relevant, "such as: 1) the place where the conduct causing the injury occurred; 2) the residence or place of business of the parties; and 3) the place where the relationship is centered." *Id.* (quoting *Hubbard*, 515 N.E.2d at 1073–74). These factors are not an exclusive list, nor are they necessarily relevant in every case. *Id.* All contacts "should be evaluated according to their relative importance to the particular issues being litigated." *Id.* (quoting *Hubbard*, 515 N.E.2d at 1074). This evaluation ought to focus on the essential elements of the whole cause of action rather than on the issues one party or the other forecasts will be the most hotly contested given the anticipated proofs. *Id.*

■ First, we must determine whether there is a true conflict between the laws of Michigan and Indiana. At the heart of this inquiry is Michigan's products liability statute, Mich. Comp. Laws § 600.2946(5). Importantly, Michele essentially concedes that there is a conflict between the laws of Michigan and Indiana. *See* Appellant's Br. p. 15 ("Subsection 600.2946(5) is the most draconian law in the country in the FDA/tort arena."). In an attempt to get

around this, she argues that M.C.L. § 600.2946(5) is procedural, not substantive; therefore, the trial court should apply Indiana substantive law to this case.

M.C.L. § 600.2946(5) provides:

In a product liability action against a manufacturer or seller, *a product that is a drug is not defective or unreasonably dangerous, and the manufacturer or seller is not liable,* if the drug was approved for safety and efficacy by the United States food and drug administration, and the drug and its labeling were in compliance with the United States food and drug administration's approval at the time the drug left the control of the manufacturer or seller. However, this subsection does not apply to a drug that is sold in the United States after the effective date of an order of the United States food and drug administration to remove the drug from the market or to withdraw its approval. This subsection does not apply if the defendant at any time before the event that allegedly caused the injury does any of the following:

(a) Intentionally withholds from or misrepresents to the United States food and drug administration information concerning the drug that is required to be submitted under the federal food, drug, and cosmetic act, chapter 675, 52 Stat. 1040, 21 U.S.C. 301 to 321, 331 to 343–2, 344 to 346a, 347, 348 to 353, 355 to 360, 360b to 376, and 378 to 395, and the drug would not have been approved, or the United States food and drug administration would have withdrawn approval for the drug if the information were accurately submitted.

(b) Makes an illegal payment to an official or employee of the United States food and drug administration

for the purpose of securing or maintaining approval of the drug.

(Emphasis added). The Michigan Supreme Court has observed that this statute *"limits the liability* of drug manufacturers and sellers where the drug at issue was approved for safety and efficacy by the United States Food and Drug Administration and labeled in compliance with FDA standards." *Taylor v. Smithkline Beecham Corp.,* 468 Mich. 1, 658 N.W.2d 127, 129–30 (2003) (emphasis added). The court elaborated:

Pursuant to this statute, unless the fraud exception in subsection a or the bribery exception contained in subsection b applies . . . ., a manufacturer or seller of a drug that has been approved by the FDA has *an absolute defense to a products liability claim* if the drug and its labeling were in compliance with the FDA's approval at the time the drug left the control of the manufacturer or seller. Thus, the Legislature has determined that a drug manufacturer or seller that has properly obtained FDA approval of a drug product has acted sufficiently prudently *so that no tort liability may lie.*

*Id.* at 131 (emphases added).

The federal courts have similarly characterized M.C.L. § 600.2946(5). Specifically, the Sixth Circuit has observed that this statute *"immunizes* drug manufacturers from liability from damages in suits contending that their drug was defective or unreasonably dangerous" if the drug was approved for safety and efficacy by the FDA, and the drug and labeling were in compliance with the FDA's approval at the time the drug left the control of the manufacturer. *Garcia v. Wyeth–Ayerst Labs.,* 385 F.3d 961, 963–64 (6th Cir.2004) (emphasis added). "Under the plain language of this statute, . . . drug manufacturer[s][are] *exempt from liability,* unless one

of the two statutory exceptions to this immunity applies." *Zammit v. Shire US, Inc.,* 415 F.Supp.2d 760, 765 (E.D.Mich. 2006) (emphasis added).

After examining the text of M.C.L. § 600.2946(5) and the relevant case law, we conclude—contrary to Michele's argument—that the statute is not procedural.[2] That is, M.C.L. § 600.2946(5) is an immunity statute that has been interpreted by the highest court in Michigan as "a legislative determination as a matter of law of when a manufacturer or seller of a prescription drug has acted sufficiently reasonably, solely for the purpose of defining the limits of a cognizable products liability claim under Michigan law." *Taylor,* 658 N.W.2d at 137. As such, M.C.L. § 600.2946(5) is plainly substantive law.

■ We now compare Michigan's "absolute defense" statute to Indiana products liability law, specifically Indiana Code § 34–20–5–1, which provides:

> In a product liability action, there is a rebuttable presumption that the product that caused the physical harm was not defective and that the manufacturer or seller of the product was not negligent if, before the sale by the manufacturer, the product:
>
> (1) was in conformity with the generally recognized state of the art applicable to the safety of the product at the time the product was designed, manufactured, packaged, and labeled; or
>
> (2) complied with applicable codes, standards, regulations, or specifications established, adopted, promulgated, or approved by the United States or by Indiana, or by an agency of the United States or Indiana.

That is, in Indiana, there is a rebuttable presumption that the product is not defective and that the manufacturer or seller is not negligent if the product is in compliance with federal standards, but in Michigan, the manufacturer or seller is exempt from liability unless certain narrow conditions are met. This is a conflict that is important enough to affect the outcome of the litigation.

■ Because there is a conflict between the laws of Michigan and Indiana that is important enough to affect the outcome of the litigation, we must determine which law to apply. The presumption is that the law of the place of the tort applies because in a "large number of cases, the place of the tort will be significant and the place with the most contacts." *Simon,* 805 N.E.2d at 805 (quoting *Hubbard,* 515 N.E.2d at 1073). Our next inquiry, therefore, is the location of the tort, or where the last event necessary to make Lilly liable occurred. *Id.*

The *last* event necessary to complete the alleged torts in this case—strict products liability, misrepresentation, and negligence—is the place of Daren's injury, which occurred when Daren committed suicide in Michigan. *See id.* at 806 ("In this case, the allegedly negligent acts of the United States, the publication of the inaccurate chart and negligence of the air traffic controllers, occurred prior to the plane crash. Therefore the last event necessary to make the United States liable [for wrongful death] was the injury, which occurred when the plane crashed in Kentucky and the decedents died.") (footnote omitted); *see also Consol. Rail Corp. v. Allied Corp.,* 882 F.2d 254, 256 (7th Cir. 1989) ("the injury is usually, but not al-

---

**2.** The cases Michele cites in her appellate brief are inapposite; therefore, they are not controlling in this case.

ways, the last act necessary to complete the tort"). Indeed, for Lilly to be liable in this case, there must be physical harm. *See* Ind.Code § 34–20–1–1 ("This article [Causes of Action: Products Liability] governs all actions that are: (1) brought by a user or consumer; (2) against a manufacturer or seller; and (3) for *physical harm* caused by a product; regardless of the substantive legal theory or theories upon which the action is brought.") (emphasis added); Ind.Code § 34–20–2–1 (listing physical harm as requirement for liability).[3] Consequently, under *lex loci delicti*, Michigan law would apply.

■ Next, we must examine whether the place of the tort "bears little connection" to the legal action. *Simon*, 805 N.E.2d at 806 (quoting *Hubbard*, 515 N.E.2d at 1074). "In a large number of cases, the place of the tort will be significant and the place with the most contacts." *Hubbard*, 515 N.E.2d at 1073. Indeed, it is a "rare case[ ]" when the place of the tort is insignificant. *Simon*, 805 N.E.2d at 806. Here, it is undisputed that Daren lived and worked in Michigan. Daren consulted with a Michigan physician and received all of his medical treatment in Mich-

igan. Dr. Chase's decision to prescribe Daren Prozac and Daren's decision to take Prozac occurred in Michigan. The Prozac samples dispensed from Dr. Chase's Michigan office to Daren were provided to Dr. Chase in Michigan by Lilly's Michigan-based sales representatives. Daren took Prozac in Michigan and took his own life there as well. The place of the tort in this case is significant. Because we hold that the place of the tort is significant to this action, we need not reach the second step of considering what other contacts exist and evaluating them according to their relative importance to the litigation at hand.[4] *See id.*

■ As a final matter, Michele argues that Indiana courts should refuse to apply M.C.L. 600.2946(5) on public policy grounds. "Indiana courts need not apply the law of a sister state if that law violates Indiana's public policy." *Schaffert by Schaffert v. Jackson Nat'l Life Ins. Co.*, 687 N.E.2d 230, 234 (Ind.Ct.App.1997), *trans. denied.* This public policy exception is very narrow. To justify disregard of another state's laws on public policy grounds, that state's laws "must appear to be against good morals or natural justice

---

**3.** Specifically, Indiana Code § 34–20–2–1 provides:

> Except as provided in section 3 of this chapter, a person who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer or to the user's or consumer's property *is subject to liability for physical harm caused by that product* to the user or consumer or to the user's or consumer's property if:
> (1) that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition;
> (2) the seller is engaged in the business of selling the product; and
> (3) the product is expected to and does reach the user or consumer without substantial alteration in the condition in which

the product is sold by the person sought to be held liable under this article.
(Emphasis added).

**4.** Michele argues that there is an exception to *lex loci delicti* that applies here, namely the "state of conduct" exception discussed in footnote twelve in our Supreme Court's opinion in *Simon*. 805 N.E.2d at 807 n. 12. However, the state of conduct discussion in footnote twelve arises in the context of the "other contacts" stage of the choice of law analysis—a stage that is reached only after the court has first concluded that the place of the injury is insignificant. Here, we conclude that the place of the tort is significant; therefore, we do not reach that stage of the analysis, and we do not address the state of conduct. *See Land v. Yamaha Motor Corp.*, 272 F.3d 514, 516–517 (7th Cir.2001).

or prejudicial to the general interests of the citizens of this State." *Maroon v. State, Dep't of Mental Health,* 411 N.E.2d 404, 411 (Ind.Ct.App.1980) (quoting *Wabash R. Co. v. Hassett,* 170 Ind. 370, 83 N.E. 705 (1908)); *see also Schaffert,* 687 N.E.2d at 234. In *Schaffert,* this court reiterated that "[w]e leave the doctrine to its traditional application in cases dealing with, inter alia, gaming contracts, lotteries, and marriages within the prohibited limits of consanguinity." *Id.* (quoting *Maroon,* 411 N.E.2d at 412).

Michele claims that "the most important reason" why Indiana courts should not apply Michigan law is because it "completely ignores the manner in which federal regulation of prescription drugs proceed." Appellant's Br. p. 8. Michele argues that because Indiana Code § 34–20–5–1 creates a presumption that can be rebutted, "which strikes a balance that is consistent with federal law," M.C.L. § 600.2946(5), which creates an "absolute defense," violates Indiana public policy. *Id.* at 11. In other words, Michele asserts that it is unfair to deny liability under Michigan law when Indiana law might permit it. As we emphasized in *Schaffert* and *Maroon:*

> Our own scheme of legislation may be different. We may even have no legislation on the subject. That is not enough to show that· public policy forbids us to enforce the foreign right. . . . We are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home. Similarity of legislation has indeed this importance; its presence shows beyond question that the foreign statute does not offend the local policy. But its absence does not prove the contrary.

*Schaffert,* 687 N.E.2d at 234; *Maroon,* 411 N.E.2d at 411 (both quoting Judge Cardoza in *Loucks v. Standard Oil Co.* of N.Y., 224 N.Y. 99, 120 N.E. 198, 201 (1918)).

The Michigan legislature has decided to give drug manufacturers an absolute defense unless certain narrow conditions are met. There is nothing immoral, unnatural, unjust, or prejudicial to the general interests of the citizens of Indiana about § M.C.L. 600.2946(5). We decline to apply the public policy exception to this case and affirm the trial court's grant of partial summary judgment in favor of Lilly.

Affirmed.

DARDEN, J., and RILEY, J., concur.