In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-1493

THOMAS M. KLEIN and ANNIE J. RICE,

*Plaintiffs-Appellants,*

*v.*

DEPUY, INCORPORATED, DEPUY ORTHOPAEDICS,
INCORPORATED, and JOHNSON & JOHNSON,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 05 C 283—**Theresa L. Springmann**, *Judge.*

ARGUED SEPTEMBER 18, 2007—DECIDED OCTOBER 25, 2007

Before EVANS, WILLIAMS, and SYKES, *Circuit Judges.*

EVANS, *Circuit Judge.* In this products liability/personal
injury suit, the defendants, DePuy Orthopaedics, Inc.,
DePuy, Inc., and Johnson & Johnson,[1] contend that North
Carolina law applies and that the case must be dismissed

---

[1] DePuy Orthopaedics, Inc. is a wholly owned subsidiary of
DePuy, Inc. DePuy, Inc. is a wholly owned subsidiary of Johnson
& Johnson International. Johnson & Johnson International is
a wholly owned subsidiary of Johnson & Johnson. For conve-
nience, we will refer to the defendants collectively as "DePuy."

under its six-year statute of repose. The plaintiffs, Mitch Klein and Annie Rice (her derivative claim is only for loss of consortium so we'll refer only to "Klein" as we move through our opinion), maintain that Indiana law applies and that the suit is timely under its more generous ten-year statute of repose. Alternatively, Klein contends that, if he is stuck with North Carolina law, an exception should be applied to permit his suit to be viewed as timely. According to DePuy, no such "exception" exists.

District Judge Theresa Springmann thought that DePuy had the better of the argument, so she granted its motion for summary judgment. *Klein v. DePuy, Inc.*, 476 F. Supp. 2d 1007, 1023 (N.D. Ind. 2007). The case is now before us on Klein's appeal. As only questions of law are presented, our review is *de novo. Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006). Summary judgment is proper if "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In September 1998, Klein underwent a left total hip replacement surgery in his home state of North Carolina. The prosthesis used in the surgery was manufactured by DePuy Orthopaedics, an Indiana corporation with its principal place of business in Indiana. Some time later, Klein experienced severe pain in his left hip, which he reported to his orthopedic surgeon, Dr. Jack W. Bowling, Jr. Dr. Bowling told Klein that his hip replacement was failing due to (among other things) osteolysis, a progressive disease commonly seen in conjunction with artificial joint replacement and caused by an inflammatory reaction to particulate debris from an artificial joint.

On June 9, 2006, Dr. Bowling performed revision surgery on Klein's hip, removing various components of the prosthesis and confirming his diagnosis of osteolysis. Dr. Bowling believed that the hylamer cup liner used in

Klein's hip replacement wore at a faster rate than predicted, causing excessive amounts of polyethylene debris to cascade down into Klein's proximal femur area. The excessive debris, Dr. Bowling said, resulted in osteolysis, which, in turn, caused Klein's pain and the failure of his prosthesis. Significantly for our purposes, Klein received (and continues to receive) all of his medical care in North Carolina.

On August 15, 2005, Klein filed suit in the Northern District of Indiana, maintaining that the hip prosthesis was defective and that it caused his injuries. Klein alleged ten counts of misconduct, including products liability, failure to warn, negligence, negligent and fraudulent misrepresentation, breach of warranties, and negligent infliction of emotional distress. As we noted, Ms. Rice, Klein's wife at the time of the suit, brought a claim for loss of consortium.

On January 19, 2006, DePuy moved for summary judgment on the basis of North Carolina's six-year statute of repose. On January 31, 2007,[2] Judge Springmann granted DePuy's motion in a comprehensive opinion and order. This appeal followed.

The first issue is whether Judge Springmann correctly concluded that Indiana would apply North Carolina law (six-year statute of repose), as opposed to Indiana law (ten-year statute of repose), to Klein's claims. In tort cases, where a conflict exists,[3] Indiana presumes that the traditional rule—*lex loci delicti*—governs. *Simon v. United*

---

[2] After DePuy moved for summary judgment, the parties filed (and the district court granted) a joint motion for extension of deadlines to allow for Klein's revision surgery.

[3] Here, it is undisputed that a conflict exists—that is, that the "differences between the laws of the states are 'important enough to affect the outcome of the litigation.'" *Simon*, 805 N.E.2d at 805. Thus, we will not belabor this preliminary matter.

*States*, 805 N.E.2d 798, 805 (Ind. 2004). Under the rule, the district court applies the substantive law of "the state where the last event necessary to make an actor liable for the alleged wrong takes place." *Hubbard Mfg. Co. v. Greeson*, 515 N.E.2d 1071, 1073 (Ind. 1987). If, and only if, that location "bears little connection" to the legal action, the presumption in favor of the location of the tort may be overcome and additional factors may be considered. *Id.* at 1073-74.

Judge Springmann found that North Carolina was the location of the tort and that it bore enough of a connection to the legal action for the traditional rule to apply. On appeal, Klein asserts three arguments against this ruling: (1) the location of the tort was actually Indiana because DePuy designed, manufactured, marketed, and distributed the allegedly defective product there; (2) assuming *arguendo* that North Carolina was the location of the tort, it bears so little significance to the legal action that the presumption is rebutted; and (3) policy considerations favor applying Indiana law. Each of these arguments fails.[4]

Klein's first argument—that Indiana was the location of the tort—is directly contradicted by case law. As we have previously stated, Indiana's *lex loci delicti* principle points to the location of the injury, not the defendant's corporate headquarters, as the source of law. *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1016 (7th Cir. 2002). Furthermore, in a recent case, *Alli v. Eli Lilly and Co.*, the Indiana Court of Appeals found that the last event necessary to complete the alleged torts of strict products

---

[4] At oral argument, Klein's counsel correctly conceded that her clients had an uphill battle, candidly admitting that, if the shoe were on the other foot, she would be arguing that North Carolina law governed.

liability, misrepresentation, and negligence brought against the manufacturer of an antidepressant medication was the injury that occurred when the plaintiff's husband committed suicide, not when the antidepressants were manufactured. 854 N.E.2d 372, 378 (Ind. Ct. App. 2006); *see also Simon*, 805 N.E.2d at 806 (finding that the last event necessary to make the defendant liable for wrongful death was the injury that occurred when the plane crashed and the decedents died, not when the prior negligent acts were committed).

In this case, the last event necessary to make DePuy liable was the injury and physical harm that occurred when the prosthesis failed and Klein developed osteolysis. This occurred in North Carolina, making the Tar Heel State the location of the tort.

Klein's second argument—that North Carolina bears little significance to the legal action—requires even less discussion. Indiana law tells us that "[i]n a large number of cases, the place of the tort will be significant and the place with the most contacts." *Hubbard*, 515 N.E.2d at 1073. Only in "rare cases" will the presumption in favor of the traditional rule be overcome. *Simon*, 805 N.E.2d at 806. In *Alli*, the Indiana Court of Appeals found that the location of the tort was significant where the plaintiff's late husband lived, worked, and received his medical treatment—including the antidepressant medication implicated in the lawsuit—in that state. 854 N.E.2d at 379.

Here, Klein resided, consulted with doctors, and decided to undergo hip replacement surgery in North Carolina. He received his prosthesis, diagnosis of osteolysis, revision surgery, and all of his medical care there. We would be hard-pressed to conclude anything but that the location of the injury is significant to this action.

Klein's final argument—that policy considerations favor applying Indiana law—also comes up short. While Indiana does have a public policy exception, it is reserved for cases where its sister state's law is "immoral, unnatural, unjust, or prejudicial to the general interests of the citizens of Indiana." *Alli*, 854 N.E.2d at 380; *see also Schaffert by Schaffert v. Jackson Nat'l Life Ins. Co.*, 687 N.E.2d 230, 234 (Ind. Ct. App. 1997) (declining to use the doctrine where the sister state's law was not "immoral or against natural justice").

The difference between the North Carolina and Indiana statutes at issue in this case concerns the time frame during which consumers may sue a manufacturer for product defects. This issue does not implicate the general interests of Indiana citizens, so we conclude that North Carolina's law would not offend the public policy of Indiana. As a result, Klein is stuck with North Carolina's six-year statute of repose. And that makes his suit untimely.

We now turn to the second issue: whether the North Carolina Supreme Court would apply an exception to its statute of repose to permit this suit to be viewed as timely.[5] The parties agree that N.C. Gen. Stat. § 1-50(a)(6)[6] governs this case. Section 1-50(a)(6) says that "[n]o action for the recovery of damages for personal injury . . . based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than six

---

[5] Currently, North Carolina law does not allow us to certify an unsettled question of state law to its Supreme Court for resolution.

[6] N.C. Gen. Stat. § 1-50(a)(6) was previously § 1-50(6). Like the district court, we will use these two citations interchangeably. All statutes cited in the following discussion refer to N.C. Gen. Stat.

years after the date of initial purchase for use or consumption." But is an exception lurking here that gives Klein more time to sue?

At first blush, this seems like an easy issue to decide. As opposed to a statute of limitations, which begins running upon the accrual of some claim and permits equitable exceptions, § 1-50(a)(6) is a statute of repose, which "serves as an unyielding and absolute barrier" to a cause of action, regardless of whether that cause has accrued. *Black v. Littlejohn*, 325 S.E.2d 469, 475 (N.C. 1985). Furthermore, the plain language of § 1-50(a)(6) creates no exceptions at all. Indeed, the North Carolina Supreme Court has already stated that "[i]t is clear from this language that Section 1-50(6) excludes *all actions* brought after six years." *Tetterton v. Long Mfg. Co.*, 332 S.E.2d 67, 72 (N.C. 1985). However, one North Carolina case, decided more than 20 years ago, prevents this from being the end of our discussion.

*Wilder v. Amatex Corp.* held that a different statute, § 1-15(b), had no application to claims arising from disease. 336 S.E.2d 66, 73 (N.C. 1985). Section 1-15(b), which actually had been repealed by the time *Wilder* was decided, stated:

> Except where otherwise provided by statute, a cause of action, other than one for wrongful death or one for malpractice arising out of the performance or failure to perform professional services, having as an essential element bodily injury to the person or a defect in or damage to property which originated under circumstances making the injury, defect or damage not readily apparent to the claimant at the time of its origin, is deemed to have accrued at the time the injury was discovered by the claimant, or ought reasonably to have been discovered by him, whichever event first occurs; provided that in such cases the

period shall not exceed ten years from the last act of the defendant giving rise to the claim for relief.

Although the primary purpose of § 1-15(b) was to change the accrual date from which the period of limitations began to run, the legislature also added the final clause, which created a ten-year statute of repose. *Wilder*, 336 S.E.2d at 69. Importantly, *Wilder* construed both provisions—that is, *all* of § 1-15(b)—to apply only to "latent injury claims," or "cases in which the bodily injury . . . was not readily apparent to the claimant at the time of its origin." *Id.* at 70 (emphasis omitted).

The reason § 1-15(b) did not apply to claims arising from disease was because the *Wilder* court found that diseases were not *latent* injuries. *Id.* at 72-73. After examining workers' compensation statutes and its decisions interpreting them, the court concluded that, when it drafted § 1-15(b), the legislature already recognized that a disease's diagnosis was the "first injury" from which various time periods began to run. *Id.* at 72. Because diseases have a first identifiable injury, the court said, they are not "latent," and § 1-15(b)—including its statute of repose—does not govern them. *Id.* at 73. Changes in the bill from its original form (which specifically referred to disease) to its final enactment (which omitted all references to disease) also supported the court's conclusion that § 1-15(b) excepted claims arising from disease. *Id.*

Klein argues that the North Carolina Supreme Court would apply this "disease exception" to § 1-50(a)(6). This is a stretch, considering that *Wilder* involved an entirely different statute and that no North Carolina state court has ever applied a disease exception to § 1-50(a)(6). But, a case out of the Fourth Circuit, again decided more than 20 years ago, predicted that just such an exception would apply.

In *Hyer v. Pittsburg Corning Corp.*, an asbestosis case, the Fourth Circuit adopted the proposition that *Wilder* "makes it plain . . . that the [North Carolina] Supreme Court does not consider disease to be included within a statute of repose directed at personal injury claims unless the Legislature expressly expands the language to include it." 790 F.2d 30, 34 (4th Cir. 1986) (quoting *Garder v. Asbestos Corp.*, 634 F. Supp. 609, 612 (W.D.N.C. 1986)). Consequently, the court applied *Wilder*'s "disease exception" to § 1-50(6). *Id.* In subsequent cases, the Fourth Circuit followed *Hyer* without much reconsideration or elaboration. *See Bullard v. Dalkon Shields Claimants Trust*, 74 F.3d 531, 533 (4th Cir. 1996); *Guy v. E.I. DuPont de Nemours & Co.*, 792 F.2d 457, 460 (4th Cir. 1986); *Silver v. Johns-Manville Corp.*, 789 F.2d 1078, 1080 (4th Cir. 1986). Significantly, *none* of these cases has been cited in any reported North Carolina state court decision.

Judge Springmann declined to follow Fourth Circuit precedent because she believed that it misinterpreted *Wilder*. We agree. While those cases accurately stated *Wilder*'s holding, they did not recognize the latent injury distinction that was so vital to *Wilder*'s outcome. Remember, *Wilder* held that diseases were excluded from § 1-15(b) because § 1-15(b) was limited to "*latent* injuries." However, *Hyer* interpreted *Wilder* to hold that, in the context of a statute of repose, diseases were not "injuries" *at all*. As a result, *Hyer* applied a disease exception to a statute that was not limited to latent injuries. We, of course, "carefully consider the opinions of our sister circuits," *Atchison, Topeka and Santa Fe Ry. Co. v. Pena*, 44 F.3d 437, 443 (7th Cir. 1994). But with all due respect here, we cannot follow the Fourth Circuit on this issue.

Now that we have rejected *Hyer*'s analysis of the "disease exception," we turn to our own prediction. After considering the three factors on which the *Wilder* court

based its decision regarding § 1-15(b), we conclude that the North Carolina Supreme Court would not apply an exception to § 1-50(a)(6).

The first factor that *Wilder* considered was the statute's purpose. As we have stated, the primary purpose of § 1-15(b) was to change the accrual date from which the period of limitations began to run on latent injury claims. *Wilder*, 336 S.E.2d at 69. Section 1-50(a)(6), however, "was generally intended to shield [ ] manufacturers of durable goods from 'open-ended' liability created by allowing claims for an indefinite period of time after the product was first sold and distributed." *Tetterton*, 332 S.E.2d at 73. As opposed to § 1-15(b), § 1-50(a)(6) says nothing about accrual nor, as we have discussed, is it limited to latent injuries.

Second, *Wilder* looked at the state of the law when the statute was enacted. The court concluded that there was no need for the legislature to change the accrual date for diseases at that time because it already recognized that diseases were not latent. 336 S.E.2d at 73. Because it deals with neither latent injuries nor accrual, the state of the law regarding when diseases are considered "injuries" for accrual purposes is irrelevant to § 1-50(a)(6). Rather, when § 1-50(a)(6) was enacted, "[t]he number of suits being brought against manufacturers was increasing . . . and the legislature sought to curtail such suit and to limit the manufacturers' liability by enacting product liability reform statutes." *Tetterton*, 332 S.E.2d at 73. As a result, unlike § 1-15(b), § 1-50(a)(6) is solely "a statute of repose and an absolute bar to plaintiffs' products liability action[s]." *Id.* at 75.

Third, *Wilder* focused on the deliberate omission of reference to disease from earlier versions of the bill to the final version. However, Klein concedes that similar evidence regarding § 1-50(a)(6) does not exist. Thus, the

three *Wilder* factors all support a conclusion that, unlike § 1-15(b), § 1-50(a)(6) was not intended to contain a "disease exception."

The final strike against Klein's position comes from a North Carolina case that considered whether a "disease exception" would apply to § 1-52(16), the statute that replaced § 1-15(b). Section 1-52(16) states:

> Unless otherwise provided by statute, for personal injury or physical damage to claimant's property, the cause of action, except in causes of actions referred to in G.S. 1-15(c), shall not accrue until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs. Provided that no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action.

As a successor statute, § 1-52(16) looks a lot like § 1-15(b) with an important difference: unlike § 1-15(b), § 1-52(16) is *not* limited to latent injury claims. *Wilder*, 336 S.E.2d at 69.

In *Dunn v. Pacific Employers Insurance Co.*, an occupational disease case, the North Carolina Supreme Court found that § 1-52(16) applied to claims arising out of disease. 418 S.E.2d 645, 648 (N.C. 1992) ("Decedent's bodily injury claim, had he lived, would have . . . been time-barred three years later under [ ] § 1-52(16)."). This finding is consistent with *Wilder* because (to repeat) unlike its predecessor, § 1-52(16) is not limited to latent injury claims. *Dunn*'s language also rejects *Hyer*'s proposition that diseases must be expressly included in a statute of limitation or repose directed at personal injury claims for the statute to apply. Because the North Carolina Supreme Court has concluded that even § 1-15(b)'s successor statute does not exempt diseases, we find no

reason to believe that it would apply such an exception to the less-similar statute of repose at issue in this case.

In sum, we agree with Judge Springmann that North Carolina law, rather than Indiana law, applies to Klein's claims. We also agree that, had the North Carolina Supreme Court received this case, it would not have applied a "disease exception" to the six-year statute of repose at issue. The plain language of the statute, its history, and North Carolina case law all support our belief that no exception was intended. We leave it up to the North Carolina legislature to amend the statute if we are mistaken.

For the foregoing reasons, summary judgment in favor of the defendants is AFFIRMED.

A true Copy:

      Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
